Trenton R. Kashima (SBN 291405)
trk@classactionlaw.com
FINKELSTEIN & KRINSK LLP
550 West C St., Suite 1760
San Diego, California 92101
Telephone:  (619) 238-1333
Facsimile:  (619) 238-5425

Kevin J. Stoops (*pro hac vice*)
kstoops@sommerspc.com
Jason T. Thompson (*pro hac vice*)
jjthompson@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

*Trial Counsel for Plaintiffs and Proposed
Class and Collective Members*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MONICA SMITH and ERIKA SIERRA**, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**KAISER FOUNDATION HOSPITALS**, a California corporation,<br><br>Defendant. | Case No.: 3:18-cv-00780—DMS-KSC<br><br>**FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiffs, Monica Smith and Erika Sierra ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby brings this First Amended Collective and Class Action Complaint against Defendant, Kaiser Foundation Hospitals ("Defendant"), and states as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA," or 29 U.S.C. § 201 *et seq.*); California Labor Code 221, 223, 226, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198, 2802; California Industrial Welfare Commission Wage Order No. 4; California Business & Professions Code § 17200; and California Labor Code § 2698 *et seq.*

2.      Defendant offers call center services to its patients and insured members located in California, Georgia and Hawaii, and employs nurses in the position of "Telemedicine Specialist" and customer service representatives in the positions of "Customer Support Specialists" and "Wellness Specialists" to receive and respond to patient phone calls, among other duties.

3.      The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* **Exhibit D**, U.S. Dept. of Labor, Fact Sheet #64.

4.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.*

5.      More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."

*Id.*  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

6.     Defendant employs Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, at a brick-and-mortar facility in San Diego, California. Additionally, Defendant also employs "Remote" Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, who work most or all of their hours from their home residences in California.

7.     Defendant requires its Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, to work a full-time schedule, plus overtime. However, Defendant does not compensate the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for all work performed. Specifically, Defendant fails to pay Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, Nurses for certain work performed "off-the-clock" at the beginning of each shift, during meal periods, and at the end of each shift.  Defendant's illegal compensation practices and policies result in Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, not being paid for all time worked, including overtime.

8.     Whether working remotely or in the brick-and-mortar call centers, Defendant requires Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, to use multiple computer programs, software programs, and applications in the course of performing their responsibilities. These programs and applications are an integral, indispensable, and important part of the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, work as they cannot perform their jobs effectively without them.

9.     Whether working remotely or in the brick-and-mortar call centers, Defendant's Telemedicine Specialists, Customer Support Specialists and Wellness

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

Specialists, perform the same basic job duties and are required to use the same or similar computer programs, software programs, applications, and phone systems.

10. Pursuant to Defendant's illegal compensation practices and policies, Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, are required to: 1) start-up and log-into computers, programs and applications, before each shift and *prior* to clocking into Defendant's timekeeping system; 2) perform computer, program and application shutdown and log-in tasks off-the-clock during their uncompensated meal periods; and 3) shut-down and log-out of computers, programs and applications, subsequent to each shift and *after* clocking out of Defendant's timekeeping system. Additionally, Defendant fails to pay Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for time spent prior to each shift locating equipment (including chairs) and subsequent to each shift shredding and disposing of patient notes.

11. Finally, Defendant engages in multiple other legal violations related to its employment of Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, including, but not limited to:

   a. Failing to pay Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for time spent driving to Defendant's brick-and-mortar locations on days that they experience technical issues with Defendant's computers, programs and applications.

   b. Failing to pay Telemedicine Specialists, Customer Support Specialists, and Wellness Specialists, for all time worked during periods when they experience technical disconnection issues.

   c. Failing to pay Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for time worked in connection with reviewing their hours and punches on Defendant's timekeeping system.

   d. Failing to pay Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for time spent traveling to mandatory training and

staff meetings, and for time spent traveling to pick up necessary equipment including VPN tokens.

    e. Failing to reimburse Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for necessary business expenditures incurred in the execution of their duties under Defendant's employ.

12.   The individuals Plaintiffs seeks to represent in this action are current and former Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, who are similarly situated to themselves in terms of having been subjected to Defendant's violations of federal and state law.

13.   Defendant knew or could have easily determined how long it takes for Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, to complete the above described off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Class for this work, but did not.

14.   Plaintiffs seek a declaration that their rights, and the rights of the putative Class, were violated, an award of unpaid wages (including overtime), an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and award of attorneys' fees and costs to make themselves and the putative Class whole for the damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

15.   This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

16.   Additionally, this Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

17.   Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

employees, including the Plaintiffs in this case, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis.

18.    This Court has original jurisdiction over Plaintiffs' state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which at least some members of the proposed classes have a different citizenship from Defendant.

19.    The court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because the state law claims and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

20.    The court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

21.    The court has personal jurisdiction over Defendant because Defendant is domiciled in the state of California, conducts business within the state of California, employs individuals within the state of California, and is registered with the California Department of the Secretary of State.

## VENUE

22.    Venue is proper in the Southern District of California because a substantial portion of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in the Southern District of California.

## PARTIES

23.    Plaintiff, Monica Smith, is a resident of Temecula, California. She has been employed by Defendant (and its predecessor entity) as a Telemedicine Specialist since May

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

2012, and signed a consent form to join this collective action lawsuit, which is attached hereto as *Exhibit A*.

24.    Plaintiff, Erika Sierra, is a resident of National City, California. She has been employed by Defendant as a Customer Support Specialist since September of 2004 and signed a consent form to join this collective action lawsuit, which is attached hereto as *Exhibit B*.

25.    Additional individuals were or are employed by Defendant as Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, during the past four years and their consent forms will also be filed in this case.

26.    Defendant, Kaiser Foundation Hospitals, is a California corporation headquartered in Oakland, California.  Defendant is licensed to do business in the State of California, has its principal place of business at One Kaiser Plaza, Oakland, California 94612, and its registered agent for service of process in California is Corporation Service Company d/b/a CSC – Lawyers Incorporating Service.

27.    Upon information and belief, Defendant has employed over three (300) Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, over the last four years.

28.    Plaintiff is informed and believes, and alleges thereon, that Defendant is responsible for the circumstances alleged herein, and proximately caused Plaintiff and similarly situated Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, to be subject to the fraudulent, unlawful, unfair, and deceptive acts and practices complained of herein.

29.    At all times herein mentioned, Defendant approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained of herein.

30.    At all times herein mentioned, Defendant's acts and omissions proximately caused the complaints, injuries, and damages alleged herein.

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

## GENERAL ALLEGATIONS

31.    Plaintiff, Monica Smith, is currently employed as a Telemedicine Specialist for Defendant[1] and has worked in that position since May 2012. Plaintiff Smith is compensated at a base rate of $59.42 per hour with a shift differential and typically works approximately 40 or more hours per week (and more than 8 hours per day). Plaintiff Smith's typical shift runs from 6:45 a.m. to 3:15 p.m.

32.    Plaintiff Smith has worked as a Remote Telemedicine Specialist since October 2012.

33.    Prior to that time, Plaintiff Smith worked as a Telemedicine Specialist in Defendant's brick-and-mortar call center location in San Diego, California.

34.    From October 2012 through August 1, 2015 Defendant required Plaintiff Smith to work one shift per month at its San Diego, California brick-and-mortar call center location.

35.    From August 1, 2015 and through the current date Defendant has required Plaintiff Smith to travel to its San Diego, California brick-and-mortar call center once during every six month period to meet with her supervisor.

---

[1] Prior to January 1, 2016 Plaintiffs were employed by Kaiser Permanente On-Call, LLC and their paychecks were issued by that entity. On or about October 23, 2015 Defendant dissolved Kaiser Permanente On-Call, LLC and absorbed all of its employees including its Telemedicine Specialists, Customer Support Specialists and Wellness Specialists.

36.     Plaintiff, Erika Sierra, is employed as a Customer Support Specialist for Defendant and has worked since September 7, 2004. Plaintiff Sierra is compensated at a base rate of $26.74 per hour, $.55 extra per hour for acting as a Qualified Interpreter of Spanish, and an additional $.35 per hour for longevity.  She typically works approximately 40 or more hours per week (and more than 8 hours per day).  Plaintiff Sierra's typical schedule is Monday through Friday from 6:00 a.m. to 2:30 p.m. and she rotates every other weekend and holidays, in the call center location of San Diego, California.

37.     Plaintiffs, along with Defendant's other Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, are responsible for, among other things, responding to inbound telephone calls from patients and insureds of Defendant and its affiliated companies/medical groups who are located in California, Georgia and Hawaii; evaluating the patient's needs; directing access to care; and communicating with physicians.

38.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's TSRs, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.

39.     One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.*

40.   More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

41.   Defendant employs Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, in a brick-and-mortar call center facility located in San Diego, California. Additionally, Defendant employs "Remote" Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, in California who work most or all of their hours from their home residence.

42.   Defendant requires its Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, to work a full-time schedule, plus overtime. However, Defendant does not compensate the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for all work performed. Specifically, Defendant fails to pay Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for certain work performed "off-the-clock" at the beginning of each shift, during meal periods, and at the end of each shift.  Defendant's illegal compensation practices and policies result in Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, not being paid for all time worked, including overtime.

43.   Whether working remotely or in the brick-and-mortar call center, Defendant requires Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, to use multiple computer programs, software programs, and applications in the course of performing their responsibilities. These programs and applications are an integral, indispensable, and important part of the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, work as they cannot perform their jobs effectively without them.

44.   Whether working remotely or in the brick-and-mortar call center, Defendant's Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, perform the same basic job duties and are required to use the same or similar computer programs, software programs, applications, and phone systems.

45.   Pursuant to Defendant's illegal compensation practices and policies, Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, are required to: 1) start-up and log-into computers, programs and applications, before each shift and *prior* to clocking into Defendant's timekeeping system; 2) perform computer, program and application shutdown and log-in tasks off-the-clock during their uncompensated meal periods; and 3) shut-down and log-out of computers, programs and applications, subsequent to each shift and *after* clocking out of Defendant's timekeeping system. Additionally, Defendant fails to pay Telemedicine Specialists, Customer Support

Specialists and Wellness Specialists, for time spent prior to each shift locating equipment (including chairs) and subsequent to each shift shredding and disposing of patient notes.

46.    Finally, Defendant engages in multiple other legal violations related to its employment of Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, including, but not limited to:

a.  Failing to pay Remote Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for time spent driving to Defendant's brick-and-mortar location on days that they experience technical issues with Defendant's computers, programs and applications.

b.  Failing to pay Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for all time worked during periods they experience technical disconnection issues.

c.  Failing to pay Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for time worked in connection with reviewing their hours and punches on Defendant's timekeeping system.

d.  Failing to pay Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for time spent traveling to mandatory training and staff meetings, and for time spent traveling to pick up necessary equipment including VPN tokens.

e.  Failing to reimburse Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for necessary business expenditures incurred in the execution of their duties under Defendant's employ.

47.    Since Remote Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, commence their workdays by starting up and logging into various programs and applications, any time they spend driving *subsequent* to the commencement

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

of their workdays to Defendant's brick-and-mortar location constitutes compensable work time.[2]

### A.   Pre-Shift Off-the-Clock Work

48.     Pursuant to Defendant's policies, training, and direction, Plaintiff sand all other Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, are required to start up and log into various secure computer programs, software programs, and applications in order to access information. The pre-shift startup and login process takes substantial time on a daily basis with said time averaging approximately (10) minutes per day, or even longer when technical issues arise.

49.     In August 2017 Defendant implemented certain changes to the computer systems, hardware and programs utilized by Remote Telemedicine Specialists, Customer Support Specialists and Wellness Specialists.

50.     Prior to implementation of the August 2017 changes, Defendant's Remote Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, were required to undertake the following essential work tasks in chronological order before clocking in for work each shift:

---

[2] Under the Portal-to-Portal Act and 29 C.F.R. §§ 785.38, time spent traveling subsequent to commencement of an employee's workday or prior to conclusion of the employee's workday is considered part of the employee's principal work activities, and thus, is compensable. Specifically, 29 C.F.R. § 785.38, states as follows: "Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked...."

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

- First, the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, were required to turn-on/warm-up their computer.

- Next, the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, were required to establish a connection to Defendant's virtual private network ("VPN").

- The Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, were then required to start-up and log-in to the following programs/applications that are utilized during their shifts including, but not limited to: Citrix; Microsoft Outlook (e-mail); Internet Explorer; Interaction Client phone system.

- Next, the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, were required to review e-mails, announcements; and educational updates.

- Finally, the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, were required to open and log-in to Defendant's timekeeping system that was located within the Interaction Client program.

51.    Subsequent to implementation of the August 2017 changes, Defendant's Remote Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, were required to undertake the following essential work tasks in chronological order before clocking in for work each shift:

- First, the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, must turn-on/warm-up their computer.

- Next, the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, are required to log-on to CS Domain with NUID# and password. Thereafter, the following programs are loaded: Skype Instant Messenger and NICE ROD.

- The Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, are then required to start-up and log-in to Microsoft Outlook

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

(e-mail) and Internet Explorer.

- Next, the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, are required to review e-mail, break schedule, announcements, and educational updates.

- The Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, are then required to load and log-in to Cisco IP Communicator and VZB VAD phone.

- Finally, the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, are required to open and log-in to Defendant's timekeeping system that was located within the VZB VAD phone program.

52.     Before clocking in when working in Defendant's brick-and-mortar call center locations, Plaintiff and each Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, must undertake the following essential work tasks in chronological order:

- First, the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, must locate necessary equipment including chairs.

- Next, the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, must turn-on/warm-up their computer.

- The Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, are then required to start-up and log-in to the following programs/applications that are utilized during their shifts including, but not limited to: Citrix; Microsoft Outlook (e-mail); Internet Explorer; Interaction Client phone system.

- Next, the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, were required to review e-mails, announcements; and educational updates.

- Finally, the Telemedicine Specialists, Customer Support Specialists and

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

Wellness Specialists, start-up and log-in to Defendant's timekeeping system, TPX.

53.    Defendant's Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, complete the above steps before being clocked-in and paid each shift; meaning that they are performing off-the-clock work in an approximate amount of ten (10) minutes per shift without compensation.

54.    Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay Plaintiff and its other Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, ten (10) minutes per day of work performed in connection with their pre-shift startup and login activities.

55.    The unpaid off-the-clock work performed prior to each shift by Plaintiffs and other Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Telemedicine Specialists and Advice Nurses

**B.    Meal Period Off-the-Clock Work**

56.    Defendant provides Plaintiffs and the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, with one unpaid meal period per shift.

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

57.     In order to deduct an unpaid meal period from an employees' compensable time, an employee must be completely relieved of his or her employment duties for the entire lunch break. 29 CFR 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be _completely relieved_ from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

58.     However, Defendant does not provide Plaintiffs and the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, with a legitimate bona fide meal period.

59.     Defendant fails to provide a bona fide unpaid meal period because it requires Plaintiffs and the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, to return to their work stations prior to the end of their meal periods and then to spend off-the-clock time logging back into the necessary computer/software programs and applications needed to begin taking calls promptly at the end of their scheduled meal periods.

60.     The work performed by Plaintiffs and Defendant's Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, during their unpaid meal periods

takes substantial time on a daily basis with said time averaging approximately three (3) minutes per day, or more.

### C.     Post-Shift Off-the-Clock Work

61.     Pursuant to Defendant's policies, training and direction, Plaintiffs and all other Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, are required to shut down and logout of certain computer programs and applications they used during their shift *after* they log-out of Defendant's timekeeping system.  The post-shift logout and shutdown process takes substantial time on a daily basis with said time averaging approximately five (5) minutes per shift, but can take substantially longer if the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, experiences technical problems with the computer/software/applications or is required to perform program or system updates.

62.     Pursuant to Defendant's policies, training and direction, a substantial portion, if not all, of the shutdown and log-out process occurs after Plaintiffs and the Telemedicine Specialists', Customer Support Specialists' and Wellness Specialists', shifts end and after they clock out of Defendant's timekeeping system.

63.     Additionally, Defendant fails to pay Plaintiffs and Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for time spent subsequent to each shift reviewing e-mails and shredding and disposing of patient notes.

64.    Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay Plaintiffs and its other Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for no less than five (5) minutes per day of work performed in connection with their end of shift shutdown and log-out activities.

65.    The unpaid off-the-clock work performed subsequent to each shift by Plaintiffs and other Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Telemedicine Specialists, Customer Support Specialists and Wellness Specialists.

**D.    Exemplary Pay-Periods to Illustrate Pre- and Post-Shift Compensation Deficiencies**

66.    Examples of specific workweeks where Defendant failed to pay Plaintiffs all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) include the following:

**Plaintiff Smith -- Pay Period of 8/16/15 to 8/29/15**

- Plaintiff Smith worked 75.5 regular hours and 5.07 "weekly overtime" hours, meaning that Plaintiff Smith worked 40 or more hours in one of the workweeks during the two week pay period. Plaintiff Smith was paid at a base hourly rate (before shift differential) of $54.12 per hour for her regular hours and $81.17 per hour (before shift differential) for the 5.07 "weekly overtime" hours.

- With pre-shift time of 10 minutes per shift, meal-period time of 3 minutes per shift, and post-shift time of 5 minutes per shift, Plaintiff Smith should have been paid no less than an additional 90 minutes (1.5 hours) at her

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

overtime rate of $81.17 during the week for which she was paid "weekly overtime" hours (plus applicable shift differential pay).

**Exhibit C**.

## Plaintiff Smith -- Pay Period of 6/18/17 to 7/1/17

- Plaintiff Smith worked 79.9 regular hours and .12 "weekly overtime" hours, meaning that Plaintiff Smith worked 40 or more hours in one of the workweeks during the two week pay period. Plaintiff Smith was paid at a base hourly rate (before shift differential) of $59.42 per hour for her regular and $89.16 per hour (before shift differential) for the .12 "weekly overtime" hours.

- With pre-shift time of 10 minutes per shift, meal-period time of 3 minutes per shift, and post-shift time of 5 minutes per shift, Plaintiff Smith should have been paid no less than an additional 90 minutes (1.5 hours) at her overtime rate of $89.16 during the week for which she was paid "weekly overtime" hours (plus applicable shift differential pay).

**Exhibit D**.

### E.   Defendant Benefitted from the Uncompensated Off-the-Clock Work

67.   At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiffs and similarly situated employees in connection with the above described pre-shift, meal period and post-shift activities performed by Plaintiffs and other Telemedicine Specialists, Customer Support Specialists and Wellness Specialists.

68.   At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiffs and other Telemedicine Specialists, Customer Support Specialists and Wellness Specialists.

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

69.     At all relevant times, Defendant was able to track the amount of time Plaintiffs and the other Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, spent in connection with the pre-shift, meal period and post-shift activities. However, Defendant failed to do so and failed to compensate Plaintiffs and other Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for the off-the-clock work they performed.

70.     At all relevant times, Plaintiffs and the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, were non-exempt hourly employees, subject to the requirements of the FLSA and the California Labor Code.

71.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, in order to pressure them into performing the pre-shift, meal period and post-shift off-the-clock work.

72.     Defendant expressly trained and instructed Plaintiffs and its other Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, to perform the above-described pre-shift activities before clocking into Defendant's timekeeping system and their shift's scheduled start time to ensure they were prepared to take calls at the moment their shifts began.

73.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists,

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

of wages owed for the pre-shift, meal period and post-shift activities they performed. Because Defendant's Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, typically worked forty (40) hours or more in a workweek and/or eight (8) hours or more in a workday, Defendant's policies and practices also deprived them of overtime pay.

74.    Defendant knew or should have known that the time spent by Plaintiffs and other Telemedicine Specialists and Advice Nurses in connection with the pre-shift, meal period and post-shift activities was compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

75.    Despite knowing Plaintiff and other Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, performed work before and after their scheduled shifts and during their meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

### E.    Defendant's Other Illegal Pay Practices

76.    In addition to the above illegal compensation policies and practices, Defendant engages in multiple other legal violations related to its employment of Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, including, but not limited to: failing to pay Remote Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for time spent driving to Defendant's brick-

and-mortar location on days that they experience technical issues with Defendant's computers, programs and applications.

77.     Pursuant to FLSA, the Portal-to-Portal Act, and state common law, Defendant is obligated to compensate Remote Telemedicine Specialists, Customer Support Specialists and Wellness Specialists,  for the time they spent working off-the-clock, including their drive time subsequent to commencement of their workday, and is obligated to pay the compensation in the form of overtime at a rate of one and one-half times the employee's regular hourly rate.

78.     In *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), the Supreme Court relied on the definition of "workday" from the Portal-to-Portal Act to determine when time was compensable.  Citing to 29 C.F.R. § 790.6(b), the *Alvarez* Court held that "during a continuous workday," the time between when an initial principal activity is undertaken and completion of the concluding principal activity falls outside of the Portal-to-Portal Act's limitations on compensable activity, and thus is compensable under the FLSA.  *Id*. at 37.

79.     As described above, Plaintiffs and the Remote Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, begin their workdays when they turn-on/warm-up their computers, which is the initial principal activity they perform each shift. They then continue to engage in work activities as they progress through the pre-shift startup and login process, including establishing a VPN connection and starting-up and logging-into the various programs and applications needed during their shifts.

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

80.     Any work Plaintiffs and the Remote Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, perform after their initial principal activity, including driving to Defendant's brick-and-mortar location when experiencing technical issues, is compensable as a matter of law.

81.     Instead of paying overtime wages for the time worked in excess of 40 hours, Defendant failed to comply with the overtime provisions of the FLSA (as well as the Portal-to-Portal Act and state common law) and, in fact, failed to pay Plaintiffs and the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for their off-the-clock work.

82.     Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay Plaintiffs and its other Remote Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for work performed in connection with driving to its brick-and-mortar locations on days when they experience technical issues with Defendant's computers, programs and applications, during their shifts and the technical issues preclude them from completing their shift remotely from their residence.

83.     Finally, Defendant engages in the following illegal compensation policies and practices in connection with its employment of Telemedicine Specialists, Customer Support Specialists and Wellness Specialists:

    a.    Defendant fails to pay Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for all time worked during periods they experience technical disconnection issues.

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

b.  Defendant fails to pay Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for time worked in connection with reviewing their hours and punches on Defendant's timekeeping system.

c.  Defendant fails to pay Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for time spent traveling to mandatory training and staff meetings, and for time spent traveling to pick up necessary equipment including VPN tokens.

d.  Defendant fails to reimburse Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, for necessary business expenditures incurred in the execution of their duties under Defendant's employ.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

84.  Plaintiffs brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All similarly situated current and former hourly Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, who work or have worked for Defendant (in a brick and mortar location or remotely) at any time from December 21, 2014 through judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

85.  Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated Telemedicine Specialists, Customer Support Specialists and Wellness Specialists.

86.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

87.     Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

88.     All of the work that Plaintiffs and the members of the FLSA Collective have performed has been assigned by Defendant, and/or Defendant has been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

89.     As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

   a. Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours that they worked in excess of 40 hours per workweek;

   b. Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendant.

90.     Defendant is aware or should have been aware that federal law required it to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

91.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

92.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

93.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal-period time, and the amount of post-shift log-out/shut-down time owed to each employee – does not vary substantially among the proposed FLSA Collective members.

94.     There are many similarly situated current and former Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

95.     This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

96.     Those similarly situated employees are known to Defendant, are readily identifiable and can be located through Defendant's records.

97.     Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will exceed three hundred workers. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 CALIFORNIA CLASS ACTION ALLEGATIONS

98.     Plaintiffs brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of all similarly situated current and former Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, employed by Defendant in the last four years in California.  Plaintiffs propose the following class definition:

> ***All similarly situated current and former hourly Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, who work or have worked for Defendant (in a brick and mortar location or remotely) in California at any time from December 21, 2013 through judgment.***

Plaintiffs reserve the right to amend the putative class definition if necessary.

99.     Plaintiffs share the same interests as the putative class and will be entitled under the California Labor Code to unpaid overtime compensation, attorneys' fees, and costs and lost interest owed to them under nearly identical factual and legal standards as the remainder of the putative class.

100.   The putative Class meets the numerosity requirement of Rule 23(a)(1)

because, during the relevant period, Defendant employed hundreds of Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, in California. The Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel, scheduling, time, phone, and payroll records, and from input received from the putative Class members.

101.   The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendant engaged in a common course of conduct that violated the legal rights of Plaintiffs and the Class.  Individual questions that Plaintiffs' claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

a.   Whether Defendant engaged in a policy or practice of failing to pay each Class member regular wages for each non-overtime hour worked.

b.   Whether Defendant engaged in a policy or practice of failing to pay each Class member overtime compensation for each overtime hour worked;

c.   Whether Defendant violated Labor Code sections 221 and 223 by making unlawful deductions to Class members' wages;

d.   Whether Defendant failed to provide each Class member with at least one 30-minute meal period on every workday of at least 5 hours and a second 30-minute meal period on every workday of at least 10 hours as required by the California Employment Law and Regulations;

e.   Whether Defendant violated section 226 of the Labor Code by willfully failing to provide accurate itemized wage statements showing the number of hours worked by each Class member and the corresponding hourly rate;

f.   Whether Defendant violated section 1174 of the Labor Code by failing to maintain accurate records of hours worked and wages paid to Class members;

g.   Whether Defendant violated section 2802 of the Labor Code by failing to indemnify the Class Members for expenditures they were required to incur in connection with performance of their job duties for Defendant.

h.   Whether Defendant was unjustly enriched by the work and services performed by Class members without compensation;

i.   Whether Defendant engaged in unfair business practices in violation of Business and Professions Code section 17200 *et seq.*; and

j.   Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating California state law.

102.   The status of all individuals similarly situated to Plaintiffs raises an identical legal question: whether Defendant's Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, are entitled to back wages, including overtime.

103.   The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiffs and the putative Class members were all employed by Defendant and performed their job duties without receiving wages, including overtime wages, owed for that work.

104.   The Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiffs and the putative Class members, and because Plaintiffs' attorneys have successfully prosecuted many complex class actions, including wage and hour class and collective actions, and will adequately represent the

interests of Plaintiffs and the putative Class members.

105.   The putative Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

106.   The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

107.   Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds or even thousands of identical actions.  Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources.  Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

### COUNT I
### VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.
### FAILURE TO PAY OVERTIME WAGES

108.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

109.   At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

110.   At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

111.   Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

112.   Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

113.   At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

114.   At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than eighteen (18) minutes (or more during shifts when they experienced technical problems) of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

115.   The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

116.   In workweeks where Plaintiffs other FLSA Collective members worked 40

hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including the shift differential where applicable. 29 U.S.C. § 207.

117.   Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

118.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## VIOLATION OF CALIFORNIA LABOR CODE §§ 223, 510, 1194, 1197.1, 1198 AND IWC WAGE ORDER 4 – FAILURE TO PAY OVERTIME WAGES

119.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

120.   At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to their employees, especially overtime compensation.

121.   At all relevant times, Plaintiffs and the Rule 23 California Class regularly performed non-exempt work and were thus subject to the overtime requirements of

California law.

122.   California Labor Code §§ 223, 510, 1194, 1197.1 1198 and Industrial Welfare Commission ("IWC") Wage Order No. 4 §§ 2(K) provide that; (a) employees must be paid no less than the applicable minimum wage for all hours worked; (b) employees are entitled to compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of eight (8) hours in a workday up to twelve (12) hours in a workday, in excess of forty (40) hours in a workweek, and for the first eight (8) hours of work on the seventh (7th) consecutive day or a workweek; and (c) employees are entitled to compensation at the rate of twice their regular rate of pay for all hours worked in excess of twelve (12) hours in a workday, and in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

123.   At all relevant times, Plaintiffs and the Rule 23 California Class regularly worked in excess of eight (8) hours in a workday and/or in excess of forty (40) hours in a workweek.

124.   At all relevant times, Defendant failed and refused to pay Plaintiffs and the Rule 23 California Class members for any and all hours actually worked in excess of the scheduled shift.

125.   Defendant intentionally, maliciously, fraudulently and with the intent to deprive the Rule 23 California Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying overtime by

reducing the rate of pay to Plaintiffs and other Rule 23 California Class members who worked overtime hours.

126.   Plaintiffs and the Rule 23 California Class were entitled to receive overtime compensation at their lawful regular rate of pay, including any shift differential where applicable. Defendant's failure to pay lawful premium overtime wages, as alleged above, was a willful violation of Labor Code §§ 223, 510, 1194, 1197.1, 1198, and IWC Wage Order No. 4.

127.   Wherefore, Plaintiffs demand payment of the unpaid balance of the full amount of wages due for unpaid time worked, as well as overtime premiums owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendant's, failure to pay for all time worked and such premium compensation, as is required under California law.

**COUNT III**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 223, 1194, 1197, 1197.1**
**AND IWC WAGE ORDER 4 – FAILURE TO PAY MINIMUM WAGES AND**
**REGULAR WAGES FOR ALL HOURS WORKED**

128.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

129.   At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, including minimum wage and regular wages for all hours worked.

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

130.   California Labor Code §§ 223, 1194, 1197, 1197.1 and Industrial Welfare Commission ("IWC") Wage Order No. 4 §§ 2(K), 4(B), provide that employees must be paid no less than the applicable minimum wage for all hours worked. *See also Armenta v. Osmose, Inc*., 135 Cal. App. 4th 314, 323 (2005) (indicating that California's Labor Code requires payment for all hours worked at the employee's regular rate of pay).

131.   At all relevant times, Defendant failed and refused to pay Plaintiffs and the Rule 23 California Class members minimum wage and regular wages for all hours worked including the off-clock-work alleged in this Complaint.

132.   Defendant intentionally, maliciously, fraudulently and with the intent to deprive Plaintiff and the Rule 23 California Class of their ability to earn a living so as to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying Plaintiff and other Rule 23 California Class members minimum wage and regular wages for all hours worked.

133.   Plaintiffs and the Rule 23 California Class were entitled to receive wages at their lawful regular rate of pay, including any shift differential where applicable, for all hours worked including the off-the-clock work alleged in this Complaint. Defendant's failure to pay such wages, as alleged above, was a willful violation of California Labor Code §§ 223, 1194, 1197, 1197.1 and IWC Wage Order No. 4 §§ 2(K), 4(B)

134.   Wherefore, Plaintiffs demand payment of the unpaid balance of the full amount of wages due for unpaid time worked at their lawful regular rate of pay, including

any shift differential where applicable, and including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendant's, failure to pay for all time worked as is required under California law.

**COUNT IV**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 221 AND 223**
**UNLAWFUL DEDUCTIONS**

135.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

136.   At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime compensation, minimum wage and regular wages for all hours worked.

137.   Defendant made deductions from Plaintiffs' and the Rule 23 California Class members' paychecks in the amount of the overtime premiums, minimum wage and regular wages earned by the employees during the pay period so as to avoid paying overtime compensation, minimum wage and regular wages.

138.   California Labor Code § 221 provides it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by employer to employee.

139.   Labor Code § 223 provides that where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract. Labor Code section 225 further provides that the violation of any provision of Labor Code §§ 221 and 223 is a misdemeanor.

140.   As a result of the conduct alleged above, Defendant has unlawfully collected or received from Plaintiffs and the Rule 23 California Class part of the wages paid to their employees.

141.   Wherefore, Plaintiffs demand the return of all wages unlawfully deducted from the paychecks, including interest thereon, penalties, reasonable attorneys' fees, and

costs of suit pursuant to Labor Code §§ 225.5 and 1194.

**COUNT V**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 226.7, 512 AND IWC WAGE**
**ORDER 4 – FAILURE TO PROVIDE MEAL BREAKS**

142.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

143.   California Labor Code §§ 226.7, 512, and Industrial Welfare Commission ("IWC") Wage Order No. 4 § §11(A) and (B) provide that an employer may not employ a person for a work period of more than five (5) hours without providing the employee with a meal period of not less than thirty (30) minutes, and may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than (30) minutes.

144.   At all relevant times, Plaintiffs and the Rule 23 California Class consistently worked in excess of five (5) or ten (10) hours in a day.

145.   At all relevant times, Defendant regularly required employees to perform work during their first and/or second meal periods without proper compensation. Defendant's practice of requiring employees to perform work during their legally mandated meal periods without premium compensation is a violation of Labor Code §§ 226.7 and 512, and IWC Wage Order No. 4 § §11(A) and (B).

146.   Defendant purposefully elected not to provide meal periods to Plaintiffs and the Rule 23 California Class members, and Defendant acted willfully, oppressively, and in conscious disregard of the rights of Plaintiffs and the Rule 23 California Class members in failing to do so.

147.   Plaintiffs are informed and believe Defendant did not properly maintain records pertaining to when Plaintiffs and the Rule 23 California Class members began and ended each meal period, in violation of Labor Code §1174 and IWC Wage Order No. 4 § §11(A) and (B).

148.   As a result of Defendant's knowing, willful, and intentional failure to provide

meal breaks, Plaintiffs and the Rule 23 California Class members are entitled to recover one (1) additional hour of pay at the employee's regular rate of pay for each work day that a meal period was not provided, pursuant to California Labor Code § 226.7 and IWC Wage Order No. 7 § 11(D), and penalties, reasonable attorneys' fees, and costs pursuant to California Labor Code §§ 218.5.

149.   Defendant's wrongful and illegal conduct in failing to provide Plaintiffs and the Rule 23 California Class members with meal breaks or to provide premium compensation, unless and until enjoined by order of this Court, will continue to cause great and irreparable injury to Plaintiff and the Rule 23 California Class members in that Defendant will continue to violate these laws unless specifically ordered to comply with the same. The expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are already entitled. Plaintiffs and the Rule 23 California Class members have no other adequate remedy at law to insure future compliance with the laws alleged herein to have been violated.

150.  Wherefore, Plaintiffs demand pursuant to Labor Code Section 226.7(b) that Defendant pay each Rule 23 California Class member one additional hour of pay at the Rule 23 California Class member's regular rate of compensation for each work day that the meal period was not provided.

## COUNT VI
## VIOLATION OF CALIFORNIA LABOR CODE § 226
## FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

151.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

152.   California Labor Code § 226 provides that every employer shall, semi-monthly or at the time of payment of wages, furnish each employee, either as a detachable part of the check or separately, an accurate, itemized statement in writing showing gross wages earned, total hours worked, and the applicable hourly rates and corresponding

number of hours worked. California Labor Code § 1174(d) and California Wage Order 4-2001 § 7(A) likewise require employers to maintain records of hours worked daily and wages paid to employees.

153.   At all relevant times, Defendant failed to furnish Plaintiffs and the Rule 23 California Class members, either semi-monthly or at the time of each payment of wages, an accurate, itemized statement conforming to the requirements of California Labor Code § 226.

154.   At all relevant times, Defendant also failed to maintain accurate records of hours worked daily and wages paid to employees as required by California Labor Code § 1174(d) and California Wage Order 4-2001 § 7(A).

155.   Plaintiffs are informed and believe that Defendant knew or should have known that Plaintiffs and the Rule 23 California Class members were entitled to receive wage statements compliant with California Labor Code § 226, and that Defendant willfully and intentionally failed to provide Plaintiffs and the Rule 23 California Class members with such accurate, itemized statements.

156.   Wherefore Plaintiffs demand that Defendant pay each and every Rule 23 California Class member fifty dollars ($50.00) for the initial pay period in which the violation occurred and one hundred dollars ($100.00) for each subsequent violation, up to a maximum of four thousand dollars ($4,000.00) pursuant to California Labor Code § 226, as well as reasonable attorneys' fees and costs.

## COUNT VII
## VIOLATION OF CALIFORNIA LABOR CODE § 280
## FAILURE TO REIMBURSE FOR NECESSARY EXPENDITURES

157.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

158.   California Labor Code § 2802 provides that every employer must indemnify its employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions

of the employer.

159.   Plaintiffs and the Rule 23 California Class members incurred necessary expenditures in the performance of their job duties for Defendant. Specifically, Plaintiffs and the Rule 23 California Class members were required to purchase telephone line and internet access, headsets, paper, and other office supplies.

160.   Defendant maintained a common policy of failing to reimburse Plaintiffs and the Rule 23 California Class members for these necessarily incurred business expenses.

161.   Plaintiffs, individually and on behalf of the members of the Rule 23 California Class, respectfully request that the Court award her and the Rule 23 California Class members all expenses and losses incurred by them (plus interest and penalties thereon) in direct consequence of the discharge of their duties for Defendant, as well as reasonable attorneys' fees and costs.

## COUNT VIII
## VIOLATION OF CALIFORNIA LABOR CODE §§ 226.7, 512 AND IWC WAGE ORDER 5-2001 – FAILURE TO PROVIDE REST BREAKS

162.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

163.   Wage Order 5-2001 provides, in part, "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable, shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes rest time per four (4) hours or major fraction thereof…. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." Wage Order 5-2001, ¶12(A).

164.   Labor Code Sections 226.7 and 512, and Wage Order 5-2001, ¶¶11(B) and 12(B) require Defendant to provide employees all rest periods specified in the applicable Wage Order. These laws and regulations further entitle employees to be paid one additional hour of pay per day at their regular rate of compensation for each day of denied rest period, during the relevant statutory periods.

165.   Defendant failed and refused to provide Plaintiffs and the Rule 23 California Class with uninterrupted, work-free 10-minute rest periods for every four hours or major fraction thereof worked. In addition, Defendant failed and refused to pay Plaintiffs and the Rule 23 California Class one hour's wages for each work day that Plaintiffs and the Rule 23 Class Members were denied a rest period.

166.   As a result of Defendant's knowing, willful, and intentional failure to provide rest periods, Plaintiffs and the Rule 23 California Class are entitled to recover one hour of pay at the employee's regular rate of pay for each work day that a rest period was not provided, pursuant to Labor Code § 226.7 and Wage Order 5-2001, ¶12(B), and penalties, reasonable attorneys' fees, and costs pursuant to Labor Code § 218.5.

167.   Wherefore, Plaintiffs demand pursuant to Labor Code §§ 226.7, 227.7, and 512, and Wage Order 5-2001, ¶¶11(B) and 12(B), that Defendant pay them and each Rule 23 California Class Member additional hour of pay at the Class Member's regular rate of compensation for each work day that the rest period was not provided at the Class Member's applicable regular, overtime, or double-time rate of pay, and the relief requested below in the Prayer for Relief.

## COUNT IX
## VIOLATION OF CALIFORNIA LABOR CODE §§ 201-203
## WAITING TIME PENALTIES

168.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

169.   Pursuant to California Labor Code § 201, if an employer discharges an employee, the wages earned and unpaid at the time of the discharge are due and payable immediately. Pursuant to California Labor Code § 202, if an employee quits or resigns his or her employment, the wages earned and unpaid at the time of the discharge are due and payable within 72 hours of the resignation.

170.   Plaintiffs are informed and believe that Class Members, including Plaintiffs, have resigned or were terminated from their employment with Defendant and have not received the overtime compensation and other wages they rightfully earned pursuant to

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

California Labor Code §§ 201-202.

171.   Defendant, willfully refused, and continue to refuse, to pay Plaintiffs and the Class Members all wages earned, including overtime premium wages and premium wages for missed meal and rest periods, in a timely manner as required by California Labor Code § 203.

172.   Plaintiffs, individually and on behalf of the Rule 23 California Class, respectfully request that the Court award all penalties due and the relief requested below in the Prayer for Relief.

## COUNT X
## VIOLATION OF BUSINESS AND PROFESSIONS CODE, § 17200, *et seq*

173.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

174.   Defendant engaged and continues to engage in unfair business practices in California by practicing, employing and utilizing the unlawful practices described above, including (a) training and directing Plaintiffs and the Rule 23 California Class to work off-the-clock without compensation; (b) making deductions to Plaintiffs' and the Rule 23 California Class members' paychecks to recover overtime premiums, minimum wage and regular wages earned by the employee; (c) requiring Plaintiffs and the Rule 23 California Class to work overtime without lawful premium compensation; (d) failing to provide lawful meal breaks or premium compensation in lieu thereof; and (e) failing to provide accurate, itemized wage statements.

175.   In addition, the conduct alleged in each of the previously stated causes of action constitute an unlawful and for unfair business practice within the meaning of Business & Professions Code § 17200, *et seq.*

176.   As a result of Defendant's conduct, Plaintiffs and the Rule 23 California Class have been harmed as described in the allegations set forth above.

177.   The actions described above, constitute false, unfair, fraudulent and deceptive business practices within the meaning of California Business & Professions Code § 17200,

*el seq.* By and through such unfair, unlawful and/or fraudulent business practices, Defendant has obtained valuable property, money and services from Plaintiffs and the Rule 23 California Class, and has deprived Plaintiffs and the Rule 23 California Class fundamental rights and privileges guaranteed to all employees under California law.

178.   Defendant has been unjustly enriched by the policies and practices described herein, and those policies and practices conferred an unfair business advantage on Defendant over other businesses providing similar services which routinely comply with the requirements of California law.

179.   Plaintiffs seek, on their own behalf, and on behalf of the putative Rule 23 California Class members, full restitution of all monies withheld, acquired and/or converted by Defendant by means of the unfair practices complained of herein, as necessary and according to proof, and/or disgorgement of all profits acquired by Defendant by means of the acts and practices described herein.

180.   Plaintiff seek, on their own behalf, and on behalf of other Rule 23 California Class members similarly situated, an injunction to prohibit Defendant from continuing to engage in the unfair business practices complained of herein. Defendant's unlawful conduct, as described above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiffs and all Rule 23 California Class members in that the Defendant will continue to violate these California laws unless specifically ordered to comply with the same. This expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are entitled under California law. Plaintiffs and the Rule 23 California Class have no other adequate remedy at law to insure future compliance with the California labor laws and wage orders alleged to have been violated herein.

### COUNT XI
### PRIVATE ATTORNEY GENERAL ACT ("PAGA")
### VIOLATION OF CALIFORNIA LABOR CODE § 2698, *et seq*.

181.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

182.   Plaintiffs are "aggrieved employees" under PAGA, as they have been employed by Defendant during the applicable statutory period and suffered one or more of the Labor Code violations herein.   As such, Plaintiffs seek to recover, on behalf of themselves and all other current and former aggrieved employees of Defendant ("PAGA Group"), the civil penalties provided by PAGA, plus reasonable attorneys' fees and costs.

183.   Plaintiffs seek to recover the PAGA civil penalties through a representative action permitted by PAGA and the California Supreme Court in *Arias v. Superior Court*, 46 Cal. 4th 969 (2009).  Therefore, class certification of the PAGA claims is not required, but Plaintiffs may choose to seek certification of the PAGA claims.

184.   Plaintiffs seek to pursue remedies pursuant to PAGA for the following violations.

a. Failure to Pay Overtime: Defendant unlawfully failed to pay Plaintiffs and the PAGA Group overtime compensation in violation of Cal. Labor Code §§ 223, 510, 1194, 1197.1, 1198 and California Wage Order No. 4-2001.

b. Failure to Pay Minimum Wages and Regular Wages: Defendant unlawfully failed to pay Plaintiffs and the PAGA Group minimum wage and regular wage compensation in violation of Cal. Labor Code §§ 223, 1194, 1197, 1197.1 and California Wage Order No. 4-2001.

c. Payment of Wages Below Designated Rate and Taking of Unlawful Deductions: Defendant unlawfully paid Plaintiffs and the PAGA Group at below the designated rate in violation of California Wage Order No. 4-2001 and Cal. Labor Code §§ 221 and 223, as detailed herein.

d. Failure to Provide Meal Breaks and Rest Breaks: Defendant unlawfully failed to provide Plaintiffs and the PAGA Group meal breaks and rest breaks as required by Cal. Labor Code 226.7, 512, and California Wage Orders No. 4-2001 and No. 5-2001.

e. Failure to Provide Complete and Accurate Wage Statements:  Defendant failed to provide complete and accurate wage statements containing all wages due to Plaintiffs and the PAGA Group, in violation of California Wage Order No. 4-2001 and Cal. Labor Code § 226(a), as detailed herein.

f.  Failure to Keep Accurate Payroll Records:  Defendant failed to provide complete and accurate wage statements regarding all wages due to Plaintiffs and the PAGA Group, in violation of California Wage Order No. 4-2001 and Cal. Labor Code § 1174 et seq., as detailed herein.

g.  Waiting Time Penalties: Defendant failed to pay Plaintiffs and the PAGA Group all wages earned, including overtime premium wages and premium wages for missed meal and rest periods, in a timely manner as required by California Labor Code §§ 201-203, as detailed herein.

g.  Failure to Reimburse for Necessary Business Expenditures:  Defendant failed to reimburse Plaintiffs and the PAGA Group for necessarily incurred business expenses, in violation of Cal. Labor Code § 2802, as detailed herein.

185.   California Labor Code § 2698, *et seq.* imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for the initial violation of Labor Code §§ 221, 223, 226, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198, and 2802, and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

186.   Plaintiffs have taken steps to ensure full compliance with the procedural requirements specified in California Labor Code 2699.3 as to each of the alleged violations. On November 8, 2017, Plaintiff Smith provided notice to the LWDA and the employer of Plaintiff's claims based on the alleged Labor Code violations, including the facts and theories supporting these claims. On December 13, 2018, Plaintiff Sierra provided notice to the LWDA and the employer of Plaintiff's claims based on the alleged Labor Code violations, including the facts and theories supporting these claims.

187.   Under PAGA, upon exhaustion, Plaintiffs and the State of California are entitled to recover the maximum penalties permitted by law for the violations of the Cal. Labor Code that are alleged in this Complaint.

188.   Enforcement of statutory provisions to protect workers and to ensure proper

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

and prompt payment of wages is a fundamental public interest.  Plaintiff's successful enforcement of important rights affecting the public interest will confer a significant benefit upon the general public. Private enforcement of these rights is necessary, as no public agency has pursued enforcement.  Plaintiff is incurring a financial burden in pursuing this action, and it would be against the interest of justice to require the payment of attorneys' fees and costs from any recovery obtained, pursuant to, *inter alia*, California Labor Code § 2699.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Monica Smith and Erika Sierra, on their own behalf and on the behalf of the putative Collective, the Rule 23 California Class members, and the PAGA Group, request judgment as follows:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.   Designating Plaintiffs as Representatives of the proposed FLSA Collective;

c.   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated to Plaintiffs, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under the FLSA;

d.   Certifying the proposed Rule 23 California Class;

e.   Designating Plaintiffs as Representatives of the proposed Rule 23 California Class;

f.   Awarding a service award to the Class Representatives in recognition of the time, effort, and risk she incurred in bringing this action and as compensation for the value she has provided to the Class members;

g.     Appointing Finkelstein & Krinsk, LLP, and Sommers Schwartz, P.C. as Class Counsel;

h.     Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, California Labor Code, and UCL;

i.     Declaring that Defendant willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

j.     Granting judgment in favor of Plaintiffs and against Defendant and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) of Plaintiffs' regular rate (including the shift differential where applicable) multiplied by all off-the-clock hours that Plaintiff worked in excess of eight (8) hours per day and/or forty (40) hours per week for the past four years;

k.     Awarding liquidated damages in an amount equal to the amount of unpaid overtime wages found due and owing;

l.     Granting judgment in favor of Plaintiffs and against Defendant and awarding the amount of unpaid minimum wages and regular wages calculated at Plaintiff's regular rate (including the shift differential where applicable) multiplied by all off-the-clock hours that Plaintiff worked for the past four years;

m.     Awarding liquidated damages in an amount equal to the amount of unpaid minimum wages and regular wages found due and owing;

n.     For statutory and civil penalties pursuant to Labor Code §§ 225.5, 226(e), 226.3, 226.7, and 2699;

o.     For disgorgement and restitution to Plaintiffs and other similarly affected Class members of all funds unlawfully acquired by Defendant by means of any acts or practices declared by this Court to violate the mandate established by California Business and Professions Code § 17200 *et seq.*;

p.     For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendant and determined to have been wrongfully acquired by Defendant as a result of violations of California Business and

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

Professions Code § 17200, *et seq.*;

q.   For an injunction prohibiting Defendant from engaging in the unfair business practices complained of herein;

r.   For an injunction requiring Defendant to give notice to persons to whom restitution is owing of the means by which to file for restitution;

s.   For actual damages or statutory penalties according to proof as set forth in California Labor Code §§ 226, 1174, and IWC Wage Order No. 7, § 7(A) related to wage statements and record keeping;

t.   For actual damages related to Defendant's failure to reimburse and indemnify Plaintiffs and the Rule 23 California Class members for necessarily incurred business expenses as required under California Labor Code § 2802;

u.   For an order requiring Defendant to show cause, if any there be, why they should not be enjoined and ordered to comply with the applicable California Industrial Welfare Commission wage orders related to record keeping for Defendant's employees related to same; and for an order enjoining and restraining Defendant and their agents, servants and employees related thereto;

v.   For pre-judgment interest as allowed by California Labor Code §§ 218.6, 1194, and California Civil Code § 3287 and other statutes;

w.   Awarding civil penalties for violations of California Labor Code §§ 221, 223, 226, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198, 2802, pursuant to California Labor Code § 2698, *et seq.*;

x.   For reasonable attorneys' fees, expenses, and costs as provided by the FLSA, 29 U.S.C. 216(b), California Labor Code §§ 218.5, 226(e) and (h), 1194, and 2699, and California Code of Civil Procedure § 1021.5; and

y.   For such other and further relief the Court may deem just and proper.

1

## JURY DEMAND

2

Plaintiffs, Monica Smith Erika Sierra, individually and on behalf of all others

3

similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant

4

to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made

5

and provided with respect to the above entitled cause.

6

7

Respectfully Submitted,

8

Dated: May 30, 2019                    Kevin J. Stoops

9

By:     *s/Kevin J. Stoops*

10

Kevin J. Stoops (*pro hac vice*)
kstoops@sommerspc.com

11

Jason T. Thompson (*pro hac vice*)
jthompson@sommerspc.com

12

SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700

13

Southfield, Michigan 48076

14

Telephone: (248) 355-0300
Facsimile: (248) 436-8453

15

16

Trenton R. Kashima (SBN 291405)

17

trk@classactionlaw.com

18

FINKELSTEIN & KRINSK LLP

19

550 West C St., Suite 1760

San Diego, California 92101

20

Telephone:  (619) 238-1333
Facsimile:  (619) 238-5425

21

22

*Trial Counsel for Plaintiffs and Proposed*

23

*Class*
*and Collective Members*

24

25

26

27

28

FIRST AMENDED COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND