UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MONICA SMITH and ERIKA SIERRA, individually and on behalf of all other similarly situated individuals,

Plaintiff,

v.

KAISER FOUNDATION HOSPITALS, a California corporation,

Defendant.

Case No.:  3:18-cv-00780-KSC

**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT [DOC. NO. 67]**

This matter is before the Court on plaintiffs' Motion for Preliminary Approval of Class/Collective Action Settlement. [Doc. No. 67.] No opposition or objection to the motion has been filed, however, for the reasons set forth below, the Motion is DENIED.

## I.     Background

This lawsuit arises out of defendant Kaiser Foundation Hospitals' ("Kaiser") alleged failure to properly compensate certain call center employees. Kaiser offers call center services to patients and insured members located in California, Georgia and Hawaii. [Doc. No. 70, First Amended Complaint ("FAC"), ¶ 2.] It employs "Telemedicine Specialists," "Customer Support Specialists," and "Wellness Specialists" to receive and respond to call

center calls, among other duties. [*Id.*] Some of the Telemedicine Specialists, Customer Support Specialists and Wellness Specialists are employed at a brick-and-mortar facility in San Diego, California. Kaiser also employs "Remote" Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, who work most or all of their hours from their residences in California. [*Id.* at ¶ 6.]

Plaintiffs alleged that Kaiser does not compensate its Telemedicine Specialists, Customer Support Specialists and Wellness Specialists for certain activities required of their employment, including primarily: 1) starting-up and logging-into computers, programs and applications, before each shift and prior to clocking into Kaiser's timekeeping system; 2) performing computer, program and application shutdown and log-in tasks off-the-clock during their uncompensated meal periods; and 3) shutting-down and logging-out of computers, programs and applications, subsequent to each shift and after clocking out of Kaiser's timekeeping system. [*Id.* at ¶10.] Additionally, they contend Kaiser fails to pay Telemedicine Specialists, Customer Support Specialists and Wellness Specialists for time spent: prior to each shift locating equipment; subsequent to each shift shredding and disposing of patient notes; driving to Kaiser's brick-and-mortar locations on days they experience technical or connectivity issues with computers, programs and applications; in connection with reviewing their hours and punches on Kaiser's timekeeping system; and traveling to mandatory training and staff meetings or to pick up necessary equipment. [*Id.* at ¶¶ 10-11.] They also claim Kaiser fails to reimburse Telemedicine Specialists, Customer Support Specialists and Wellness Specialists for necessary business expenditures incurred in the execution of their job duties. [*Id.* at ¶11.]

Plaintiff Monica Smith was initially employed by Kaiser as a Telemedicine Specialist at its brick-and-mortar call center, but has worked as a Remote Telemedicine Specialist since May 2012. [*Id.* at ¶¶ 31–33.] She is compensated at a base rate of $59.42 per hour with a shift differential and typically works approximately 40 or more hours per week (and more than 8 hours per day). [*Id.* at ¶ 31.] Her typical shift runs from 6:45 a.m. to 3:15 p.m. [*Id.*] From October 2012 through August 1, 2015, as part of her duties as a

Remote Telemedicine Specialist, Kaiser required Smith to work one shift per month at its San Diego brick-and-mortar call center location. [*Id*. at ¶ 34.] Since August 1, 2015, Kaiser has required Smith to travel to its San Diego brick-and-mortar call center once every six month period to meet with her supervisor. [*Id*. at ¶ 35.]

Plaintiff Erika Sierra is employed as a Customer Support Specialist and has worked for Kaiser since September 7, 2004. [*Id*. at ¶ 36.] Sierra is compensated at a base rate of $26.74 per hour, $.55 extra per hour for acting as a Qualified Interpreter of Spanish, and an additional $.35 per hour for longevity. She typically works approximately 40 or more hours per week (and more than 8 hours per day). Sierra's typical schedule is Monday through Friday from 6:00 a.m. to 2:30 p.m. and she rotates every other weekend and holidays, at the San Diego, California brick-and-mortar call center. [*Id*.]

On December 21, 2017, Smith filed a hybrid class and collective action complaint in the District Court for the Northern District of California, asserting Kaiser had engaged in willful violations of the Fair Labor Standards Act ("FLSA," or 29 U.S.C. § 201, *et seq*.); California Labor Code §§ 221, 223, 226, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198, 2802; California Industrial Welfare Commission Wage Order No. 4; California Business & Professions Code § 17200; and the Private Attorneys General Act ("PAGA"), California Labor Code § 2698, *et seq*, with respect to its policies and practices for the payment of Telemedicine Specialists and Advice Nurses. [Doc. No. 1.] On April 20, 2018, the case was transferred to this Court, pursuant to the parties' stipulation, and on June 5, 2018, the case was transferred to the undersigned for all purposes, pursuant to the parties' consent. [Doc. Nos. 28 & 43.] Thereafter, the parties reached an agreement for conditional certification of a FLSA collective action and dissemination of Court-authorized notice, which was adopted by the Court. [Doc. Nos. 44 & 48.] At that time the conditionally certified collective action members were identified as:

> All current and former hourly telemedicine specialists who work or have worked for Kaiser Foundation Hospitals, or KP on Call, LLC, any time since May 21, 2015.

[Doc. No. 44-1.] A Notice of Right to Join Lawsuit was then disseminated to the 286 conditionally certified collective action members. [Doc. No. 67-3, *Decl. of Kevin J. Stoops*, ¶ 16.] By the time the opt-in period closed, 64 Telemedicine Specialists had filed their consent to join this action. [*Id.*]

Starting in July 2018, the parties engaged in a voluntary exchange of discovery and two mediation sessions with wage and hour class action mediator David Rotman. Additionally, plaintiffs informed Kaiser of their intention to amend the Complaint to expand it to include claims on behalf of Kaiser's Customer Support Specialists. Kaiser agreed to provide data and discovery concerning the Customer Support Specialists so that their claims could be thoroughly and adequately analyzed prior to mediation. This data sharing and mediation process culminated in a settlement between the parties, which was reached in February 2019. [*Id.* at ¶¶ 17-23.]

Several months later, on May 30, 2019, plaintiffs filed the FAC, pursuant to the parties' Joint Motion. [Doc. Nos. 66 & 70.] The FAC adds Sierra, who had previously opted in as a FLSA collective action member, as a class representative, and adds two causes of action (Violation of California Labor Code § 226.7, 512 and IWC Wage Order 5-2001 – Failure to Provide Rest Breaks and Violation of California Labor Code §§ 201-203 – Waiting Time Penalties) on behalf of Customer Service Support Specialists. It also redefines and broadens the scope of the proposed FLSA collective action to include Customer Support Specialists and Wellness Specialists (formerly referred to as Advice Nurses), and reaches back an additional five months to December 21, 2014. In this pleading, which was filed contemporaneously with the instant Motion, the FLSA collective action group is nationwide and is defined as:

> All similarly situated current and former hourly Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, who work or have worked for Defendant (in a brick and mortar location or remotely) at any time from ***December 21, 2014*** through judgment.

[Doc. No. 70, ¶ 84 (emphasis added).]

The FAC defines the Fed. R. Civ. P. 23 California-based putative class:

> All similarly situated current and former hourly Telemedicine Specialists, Customer Support Specialists and Wellness Specialists, who work or have worked for Defendant (in a brick and mortar location or remotely) ***in California*** at any time from ***December 21, 2013*** through judgment.

[*Id*. at ¶ 98 (emphasis added).]

## II. Settlement Agreement Terms

On May 28, 2019, plaintiffs filed the instant Motion, pursuant to which they request the Court enter an order "(1) preliminarily certifying a class for settlement purposes under the Federal Rules of Civil Procedure, Rule 23 (e.g., "Rule 23") and conditionally certifying a FLSA collective for settlement purposes under 29 U.S.C. §201., *et seq.* (as defined in the Parties' Stipulation of Settlement); (2) preliminarily approving the parties' Settlement; (3) preliminarily appointing plaintiffs Monica Smith and Erika Sierra as Class Representatives for the Class/Collective and Plaintiffs' counsel as Class Counsel; (4) approving the form of the Parties' proposed Notice; and (5) scheduling a hearing on the final approval of the Settlement and approval of the application of Class Counsel and Plaintiffs for their requested attorneys' fees, costs, and service awards." [Doc. No. 67, p. 2.]

Plaintiff's Motion includes a Settlement Agreement, which is unsigned, but is purported to accurately reflect the parties' agreement. [Doc. No. 67-2.] The definition of the putative class that is offered in the Settlement Agreement is narrower than the FAC, in that it is limited to employees who worked at defendant's San Diego location, specifically:

> All current and former employees who, between December 21, 2013 and preliminary approval (the "Class Period"), worked for Kaiser Foundation Hospitals at its San Diego, California location, with the job title of Customer Support Specialist, Wellness Specialist, or Telemedicine Specialist, in job codes 20005, 50278, and 20186.

[Doc. No. 67-2, ¶ 1.6.] A separate definition is not offered for the FLSA Collective Action.

The Settlement Agreement requires Kaiser to pay a gross settlement amount of $1,475,000, in addition to any employer payroll taxes. [*Id*. at ¶ 5.1.] The manner in which the gross settlement amount, which is non-reversionary, is to be allocated is described somewhat differently in the Motion than the parties' Settlement Agreement. The Settlement Agreement allocates this amount as follows:

> Fees not to exceed $442,500, as well as incurred litigation costs, to plaintiffs' counsel (the motion indicates counsel's recovery of litigation costs shall not exceed $55,000, however, the Settlement Agreement contains no restriction) [cf. *Id*. at ¶ 5.2 and Doc. No. 67-1, p. 19.];

> $7,500 as an incentive award for named plaintiff Smith, $5,000 to opt-in plaintiff Fox, and $2,500 to named plaintiff Sierra [Doc. Nos. 67-2, ¶ 5.3, 67-1, p. 19.];

> $40,000 to settlement of PAGA claims, of which $30,000 is earmarked to go to the California Labor & Workforce Development Agency ("LWDA") and $10,000 will remain in the settlement fund for distribution thereof [Doc. No. 67-2, ¶ 5.4.];

> $12,000 or $15,000 to Simpluris, Inc., the Settlement Administrator, for administrative costs [cf. Doc. No. 67-2, ¶ 5.1 (allocating $15,000 for administrative costs) and Doc. No. 67-1, p. 19 (allocating $12,000 for same).];

> The remainder, i.e., the Net Settlement Amount, is to be distributed as Individual Settlement Payments to Class Members, including each Class Member's respective share of any payroll taxes owed. [Doc. No. 67-2, ¶ 1.23.]

Plaintiffs estimate the Net Settlement Fund will total $920,500, however, it is not clear how this total was calculated given the inconsistencies between the Settlement Agreement and the Motion. [Doc. No. 67-1, p. 19.] They estimate a class size of 437 class members, which they represent would yield an average payment of $2,104.40 per class member. [*Id*.]

In exchange for these payments, the Settlement Agreement provides that participating Class Members will release the following claims:

any and all claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorney's fees, damages, action or causes of action, contingent or accrued for, which relate in any way to the allegations and claims asserted in the Complaint, failure to pay overtime compensation (Cal. Lab. Code §§ 510, 1194, 1198, 1199, and Wage Order 4-2001); failure to reimburse business expenses (Cal. Lab. Code § 2802); failure to pay minimum wages and regular wages for all hours worked (Cal. Lab. Code §§ 223, 1194, 1197.1 and Wage Order 4-2001); unlawful wage deductions (Cal. Lab. Code §§ 221 and 223); failure to provide compliant meal breaks (Cal. Lab. §§ 226.7 and 512 and Wage Order 4-2001); failure to provide compliant rest periods (Cal. Lab. § 226.7 and Wage Order 4-2001); failure to provide accurate itemized wage statements (Cal. Lab. § 226(a)); failure to pay all wages owed upon termination in violation of Cal. Lab. Code §§ 201-203; violations of the PAGA (Cal. Lab. § 2698, *et seq*.); Unfair Competition (Bus. & Prof. Code § 17200); violations of the FLSA (29 U.S.C. §§ 201, *et seq*.); claims for restitution and other equitable relief, liquidated damages, punitive damages, off the clock work, rounding/grace period, overtime, minimum wage, interest, wages, on call time, meal and rest period penalties, waiting time penalties, penalties of any nature whatsoever, any other benefit claimed on account of the allegations asserted in the operative Complaint ("Released Claims"). This release shall extend through the date of final approval.

[Doc. No. 67-2, ¶ 6.1.] The Agreement then further provides that Class Members release all FLSA claims by virtue of cashing, depositing, or endorsing their settlement checks:

In addition to the claims enumerated above, each member of the Settlement Class who endorses his or her Individual Settlement Payment check by signing the back of the check and depositing or cashing the check shall release and forever waive any and all claims the Settlement Class member may have under claims asserted in the Complaint for violations of the Fair Labor Standards Act; and any and all claims for restitution, including without limitation back pay, attorneys' fees and costs, interest, and liquidated damages under the FLSA ("FLSA Release").

7

[*Id.*][1] Additionally, each Settlement Class Member waives all rights provided by California Civil Code section 1542. [*Id.*]

## III. Legal Standards For Approval of a Settlement of a Hybrid FLSA Collective/Rule 23 Class Action

A Rule 23 class action may not be settled without approval of the court. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998) (citing Fed. R. Civ. P. 23(e)). "The primary concern . . . is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). "Approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016). The instant motion involves the first step of the process.

The settlement also purports to settle and release the FLSA claims in the FAC (as well as any other FLSA claims the class may have). FLSA claims brought on behalf of similarly situated individuals are frequently referred to as collective actions. *See Leuthold*

_____

[1] *See also*

> **4.2 FLSA Opt-In.** The back of all Individual Settlement Payment checks will provide that Class Members who endorse their Individual Settlement Payment check by signing the back of the check and depositing or cashing the check will opt in to the FLSA Release.
>
> Specifically, each check shall be affixed with the following endorsement:
>
> By cashing this check, you are releasing any and all claims, rights, causes of action and liabilities, whether known or unknown, for any and all types of relief under the Fair Labor Standards Act, including without limitation claims for failure to pay minimum wage, overtime, and for all hours worked, and any and all claims for recovery of compensation, overtime pay, minimum wage, liquidated damages, interest, and/or penalties tied to such claims, that arose or accrued at any time from December 21, 2014 through [Preliminary Approval Date], arising from your employment with Kaiser Foundation Hospitals. Your release does not include, however, any claims, rights, causes of action or liabilities that cannot be released as a matter of law.

[Doc. No. 67-2. ¶ 4.2.]

*v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004); *see also Does v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000) Similar to Rule 23 class actions, "[s]ettlement of an FLSA claim, including a collective action claim, requires court approval." *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv660-HSG, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016); *see also Dunn v. Teachers Ins. & Annuity Assoc. of Am., No.* 13-cv-5456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) ("Most courts hold that an employee's overtime claim under FLSA is non-waivable and, therefore, cannot be settled without supervision of either the Secretary of Labor or a district court.").

However, "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). One of the primary differences is that the "FLSA and Rule 23 provide different means for participating in a class action." *Leuthold*, 224 F.R.D. at 469. Specifically:

> In a class action, once the district court certifies a class under Rule 23, all class members are bound by the judgment unless they opt out of the suit. By contrast, in a collective action each plaintiff must opt into the suit by "giv[ing] his consent in writing." 29 U.S.C. § 216(b). As a result, unlike a class action, only those plaintiffs who expressly join the collective action are bound by its results.

*McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007). Despite these differences, when considering a motion to approve the settlement of either a Rule 23 class or an FLSA collective action, before a class or collective has been certified, the Court must first certify the class or collective for the purpose of the settlement. *See generally Millan v. Cascade Water Servs., Inc.,* 310 F.R.D. 593, 602-07 (E.D. Cal. 2015).

## IV.    Preliminary Certification of Rule 23 Class

A court "must pay undiluted, even heightened, attention to class certification requirements in a settlement context." *Hanlon*, 150 F.3d at 1019 (internal quotation marks omitted). Thus, before approving the settlement itself, the Court's "threshold task is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity,

(2) commonality, (3) typicality, and (4) adequacy of representation." *Id*. In addition, the Court must determine whether class counsel is adequate (Fed. R. Civ. P. 23(g)), and whether "the action is maintainable under Rule 23(b)(1), (2), or (3)." *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000) (*quoting Amchem Prod. v. Windsor*, 521 U.S. 591, 614 (1997)).

The settlement here envisions a class consisting of "[a]ll current and former employees who… worked for Kaiser Foundation Hospitals at its San Diego, California location, with the job title of Customer Support Specialist, Wellness Specialist, or Telemedicine Specialist" between December 21, 2013 and preliminary approval. [Doc. No. 67-2, ¶ 1.6.] Plaintiffs seek certification of this class pursuant to Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## A.    Numerosity

The class must be so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a)(1). "A proposed class of at least forty members presumptively satisfies the numerosity requirement." *Valle v. Glob. Exch. Vacation Club*, No. SACV162149DOCJCGX, 2017 WL 433998, at *2 (C.D. Cal. Feb. 1, 2017). In their Motion plaintiffs estimate there are approximately 437 class members. Although no evidence has been proffered in support of this assertion, for the purpose of preliminary approval the Court will accept this representation and find this requirement has been met.

## B.    Commonality

This requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. However, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (*quoting Gen. Tel. Co. of Southwest v. Falcon*,

457 U.S. 147, 157 (1982)). This means that each member's claims must depend upon a common contention capable of class wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. Here, this requirement is satisfied because the class claims involve common questions of law and fact surrounding Kaiser's policies, which plaintiffs allege lead to the systemic underpayment of employees at the beginning, middle and end of their shifts.

### C.    Typicality

The typicality requirement is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose, or the relief sought. The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992.)

Here, the named plaintiffs' claims and those of putative class members are based on the claims that Kaiser's policies violate various California labor laws, as well as the FLSA. Moreover, Smith, Sierra and the putative class members are alleged to have suffered the same injuries, including the non-payment for time spent on required job functions at the beginning of their shifts and end of their shifts, as well as during uncompensated meal breaks, as well as penalties for various other labor code violations. Therefore, for purposes of preliminary certification, plaintiffs have made an adequate showing of typicality.

### D.    Adequacy

The adequacy requirement asks whether the representative "will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution

of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 462.

Plaintiffs have not provided the Court with any evidence upon which it could conclude that neither the named plaintiffs nor counsel have a conflict of interest with other class members. Mr. Stoops' declaration does not address this issue and no declarations have been provided by either named plaintiff.

Furthermore, while plaintiffs' counsel appears to have extensive experience in litigating wage and hour class actions, as explained herein, plaintiffs' Motion has numerous deficiencies that are an impediment to preliminary approval. Of particular concern is the structuring of the settlement, which requires Rule 23 class members to also opt-in and release all FLSA collective action claims, without any separate compensation, in order to receive the benefit of the settlement of the state law based claims under Rule 23, as discussed below. The complete failure to properly structure the settlement of this hybrid action raises questions as to counsel's understanding of the procedural rules applicable to the FLSA claims. Notwithstanding the foregoing, because the Court is denying the Motion on other grounds, it need not reach a conclusion at this stage as to whether the named plaintiffs or counsel adequately represent the class.

## E.    Predominance and Superiority

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. "Rule 23(b)(3) permits a party to maintain a class action if . . . 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Connecticut Ret. Plans & Trust Funds v. Amgen, Inc.*, 660 F.3d 1170, 1173 (9th Cir. 2011), *aff'd*, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) (*citing* Fed. R. Civ. P.

23(b)(3)). The Ninth Circuit refers to these questions as the "predominance" and "superiority" inquiries. *Hanlon*, 150 F.3d at 1022-23.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. at 1022 (*quoting Amchem*, 521 U.S. at 623). "[T]he presence of commonality alone is not sufficient. . . ." *Id*. "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). Further, "[s]ettlement benefits cannot form part of a Rule 23(b)(3) analysis; rather the examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" *Id*. (*quoting Amchem*, 521 U.S. at 623). Here, the main injuries to the putative class members seem to be largely identical and are all alleged to be the result of Kaiser's labor policies. Although the scope of the underpayment of wages and the amount of penalties may in the end vary from member to member, the determination of whether the policies at issue actually violate California labor laws predominate over the individual damages issues.

The superiority inquiry "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "In resolving the Rule 23(b)(3) superiority inquiry, the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context." *Mitchinson v. Love's Travel Stops & Country Stores, Inc*., No. 115CV01474DADBAM, 2016 WL 7426115, at *6 (E.D. Cal. Dec. 22, 2016). The Court is satisfied that in light of the relatively limited potential recovery for the class members as compared with the costs of litigating the claims, each of these requirements weighs in favor of finding that the superiority requirement is satisfied.

/ /

/ /

## V. Conditional Certification of FLSA Collective Action

The standards for certifying an FLSA collective are not as well-defined as those for Rule 23 class actions. The FLSA provides for a private right of action to enforce its provisions "by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Neither the FLSA, nor the Ninth Circuit, nor the Supreme Court has defined the term 'similarly situated.'" *Millan*, 310 F.R.D. at 607. However, "a Court has a considerably less stringent obligation to ensure fairness of the settlement in a FLSA collective action than a Rule 23 action because parties who do not opt in are not bound by the settlement." *Id*. (internal quotations marks omitted).

Here, plaintiffs have not provided adequate information to determine the size and scope of the FLSA collective action. As mentioned earlier, plaintiff's Motion appears to apply the same parameters for the collective action group as the Rule 23 putative class, which are:

> All current and former employees who, between **December 21, 2013** and preliminary approval (the "Class Period"), worked for Kaiser Foundation Hospitals at its **San Diego, California** location, with the job title of Customer Support Specialist, Wellness Specialist, or Telemedicine Specialist, in job codes 20005, 50278, and 20186.

[Doc. No. 67-2, ¶ 1.6 (emphasis added.] They represent, again without any evidentiary substantiation, the collective class action group consists of approximately 437 potential opt-in plaintiffs, the same size estimated for the Rule 23 class action. [*Id.*] In addition to lacking evidentiary substantiation, plaintiffs' definition for the collective action is problematic for these reasons:

First, the FAC seeks recovery for a shorter time period than collective action definition currently posited, dating back only to **December 21, 2014**. [cf. Doc. No. 70, ¶ 84 and Doc. No. 67-2, ¶ 1.6.] The Court cannot certify a collective action that is defined more broadly than the scope of the pleadings.

Second, the parameters for the collective action group set forth in plaintiffs' Motion are also inconsistent with the language of the Settlement Agreement, including specifically

the release language set forth in Section 4.2, which indicates FLSA claims would be released for the time period **December 21, 2014** through the preliminary approval date.

Third, the Court previously conditionally certified a **_nationwide_** collective action group of Telemedicine Specialists. Notice of Right to Join Lawsuit was disseminated to members of this group, of which 64 Telemedicine Specialists opted-in to this lawsuit. Plaintiffs now seek conditional certification of a group that is limited to San Diego based employees but do not address the fact that 64 individuals from a nationwide group have already opted-in to the case. The Court's concern, thus, is whether any of the 64 opt-in plaintiffs, who are now party plaintiffs, were excluded from the newly defined collective action group and settlement, which is limited to San Diego. *See e.g. Campbell v. City of Los Angeles*, 903 F.3d 1090, 1104-05 (9th Cir. 2018); *see also Mickles v. Country Club, Inc.*, 887 F.3d 1270, 1278 ("[O]pt-in plaintiffs remain party plaintiffs until the district court determines they are not similarly situated and dismisses them.").

Because of these concerns, the Court cannot preliminarily certify the collective action group.

## VI. Preliminary Review of Settlement Terms

### A. Rule 23 Class Action Legal Standards

With respect to Rule 23 class actions, "[a]t the preliminary approval stage, the Court may grant preliminary approval of a settlement if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Sciortino v. PepsiCo, Inc.*, No. 14-CV-00478-EMC, 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016) (*quoting Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011)). "At the preliminary approval stage, a full fairness analysis is unnecessary." *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2014 WL 718509, at *4 (N.D. Cal. Feb. 24, 2014) (internal quotation marks and citation omitted). "Closer scrutiny is reserved for the final approval hearing." *Sciortino*, 2016 WL 3519179, at *4.

Federal Rule of Civil Procedure 23(e) instructs that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Pro. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id*. at 1026. This determination requires the Court to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc*., 696 F.3d 811, 818-19 (9th Cir. 2012).

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. Further, because the Settlement Agreement here was negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Radcliffe v. Experian Info. Sols. Inc*., 715 F.3d 1157, 1168 (9th Cir. 2013) (*quoting In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). However, "the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane*, 696 F.3d at 819. Ultimately, a "district court's final determination to approve the settlement should be reversed 'only upon a strong showing that the district court's decision was a clear abuse of discretion.'" *Hanlon*, 150 F.3d at 1027 (*quoting In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995)).

/ /

## B. FLSA Collective Action Legal Standards

Although the Ninth Circuit has not established a standard for district courts to follow when evaluating an FLSA settlement, California district courts frequently apply the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. by and Through U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982). *Dunn*, 2016 WL 153266, at *3. Under that standard, the settlement must constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." 29 U.S.C. § 216(b); *Lynn's Food Stores*, 679 F.2d at 1355; *see also Ambrosino v. Home Depot U.S.A., Inc.*, No. 11cv1319 L(MDD), 2014 WL 3924609, at *1 (S.D. Cal. Aug. 11, 2014) ("A district court may approve an FLSA settlement if the proposed settlement reflects 'a reasonable compromise over [disputed] issues.'") (*quoting Lynn's Food Stores*, 679 F.2d at 1354).

The standard for approving FLSA collective actions may be nominally different from the standard for approving class actions under Federal Rule of Civil Procedure 23, but "many courts begin with the well-established criteria for assessing whether a class action settlement is fair, reasonable and adequate under [Rule] 23(e) and reason by analogy to the FLSA context." *Millan v. Cascade Water Servs., Inc.*, No. 1:12-cv-1821-AWI-EPG, 2016 WL 3077710, at *3 (E.D. Cal. Jun. 2, 2016) (internal quotation marks omitted); *see also Otey v. Crowdflower, Inc.*, No. 12-cv5524-JST, 2014 WL 1477630, at *11 (N.D. Cal. Apr. 15, 2014) ("[T]he factors that courts consider when evaluating a collective action settlement are essentially the same as those that courts consider when evaluating a Rule 23 settlement."). Accordingly, if the settlement here warrants approval under Rule 23(e), it is likely to warrant approval under the FLSA as well.

## C. Analysis

For the reasons discussed below, there are multiple issues that preclude preliminary approval of the parties' settlement at this time:

/ /

/ /

/ /

### 1. Inclusion of FLSA Claims

Plaintiffs seek to link settlement of state and federal claims via a single check with disclosure language on the reverse. Under their proposal, Rule 23 class members would opt-in to the FLSA collective action and release all FLSA claims, for no separate compensation, when they cash their checks for settlement of the state law claims. (Doc. No. 67-2, ¶ 4.2.) This procedure and the inclusion of FLSA claims renders this settlement improper. Indeed, the many flaws in this proposed settlement demonstrate why the question of whether a Rule 23 class action can co-exist with a related FLSA collective action has divided district courts in the Ninth Circuit. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1093 (9th Cir. 2011). These numerous deficiencies must be remedied in any subsequent motion for preliminary approval of a settlement.

First, this procedure does not obtain the consent required under the FLSA. 29 U.S.C. § 216(b). ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.") Individuals who file a consent and affirmatively join in the collective action, of course, can be bound to a full release of all federal and state rights. It is unconscionable, however, to try to take away the FLSA rights of all the Rule 23 class members, whether or not they choose to affirmatively consent and join in to the FLSA collective action.

Second, as is discussed further in Section IV.C.5 below, the proposed procedure and language does not give adequate notice or explanation of the FLSA implications. As the Supreme Court has explained, the benefits of collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Under the proposed procedure, however, individuals would have notice of the opportunity opt-in to the case only upon receipt of the settlement check, which is issued after approval of the final settlement agreement. [Doc. No. 67-2, ¶ 4.2.] Even if this procedure could be construed as adequate consent, which it

cannot, obtaining consent to join the litigation after final approval of the settlement leaves an opt-in plaintiff with little opportunity to participate meaningfully in the litigation.

Third, the procedure proposed by plaintiffs forces Rule 23 class members to opt-out of the settlement of their state law claims if they do not wish to opt-in to the FLSA collective action and also release those claims. As a result, "Class Members are assessed a penalty (in the full amount of their share of the settlement) for not opting-into the FLSA class." *Sharobiem v. CVS Pharmacy, Inc*., No. CV139426GHKFFMX, 2015 WL 10791914, at *3 (C.D. Cal. Sept. 2, 2015). "Under no circumstances can counsel collude to take away FLSA rights including the worker's right to control his or her own claim without the burden of having to opt out of someone else's lawsuit." *Kakani v. Oracle Corp.*, 2007 WL 1793774 at *7 (N.D. Cal., June 19, 2007.) As discussed in *Sharobiem*, the legality of this opt-in structure is suspect.

Lastly, no separate value is being paid for the FLSA claim. The fact that the settlement calls for a release of FLSA claims in exchange for no consideration is problematic. "No one should have to give a release and covenant not to sue in exchange for zero (or virtually zero) dollars." *Daniels v. Aeropostale West, Inc*., No. C 12-5755 WHA, 2014 WL 2215708, at *3 (N.D. Cal. May 29, 2014); *see also Selk v. Pioneers Mem. Healthcare Dist*., 159 F.Supp. 3d 1164, 1178 (S.D. Cal. 2016) ("Only when opt-in plaintiffs receive independent compensation, or provide specific evidence that they fully understand the breadth of the release, will a broad release of claims survive a presumption of unfairness."). It is no answer to say that members deserve nothing, so no harm is done in extracting the release and covenant. *Daniels*, 2014 WL 2215708, at *3. A release of FLSA claims in exchange for no consideration is not "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." 29 U.S.C. § 216(b). As a result, courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims. *Millan*, 31 F.R.D. at 602; *see also Khanna v. Intercon Sec. Systems, Inc*., No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *2 (E.D. Cal. Apr. 8, 2014) (approving hybrid settlement that allocated

two-thirds of net settlement amount to state claims and one-third of net settlement amount to FLSA claims); *Pierce v. Rosetta Stone*, Ltd., No. C 11-01283 SBA, 2013 WL 1878918, at *3 (N.D. Cal. May 3, 2013) (same).

Accordingly, if Kaiser wants a release of bona fide FLSA claims, it should have to pay fair and reasonable consideration for that release. On the other hand, if there is no bona fide dispute over FLSA provisions, plaintiffs should dismiss the FLSA claims without prejudice, and the parties can limit their settlement to the Rule 23 class action claims.

## 2. Estimated Exposure

The motion lacks sufficient evidence or information that would allow the Court to evaluate the reasonableness of the settlement amount. To determine whether a settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated. *Millan*, 310 F.R.D. at 611. While plaintiffs have explained how they calculate Kaiser's potential exposure on the Off-the-Clock wage claims, alleged Labor Code violations and PAGA claim, they have not provided any such assessment of the FLSA claims. [Doc. No. 67-3, *Stoops Decl*. ¶ 40.]

Furthermore, the information provided as to how plaintiffs calculated Kaiser's potential exposure on the Off-the-Clock wage claims, alleged Labor Code violations and PAGA claim is highly generalized and where specifics are provided, seemingly incomplete. For example, plaintiffs' counsel summarily explains he retained expert economists who, "with [counsel's] assistance, prepared a time consuming and complicated damage analysis of all claims at issue in this case." [*Id*. at ¶ 37.] Counsel then explains the first step of the analysis was to identify class metrics, which was done for Telemedicine Specialist and Customer Support Specialist class members based on timekeeping and pay records for periods of time that are more limited than the Class Period.[2] [*Id*. at ¶ 38 & 39.]

---

[2] The time period analyzed for Telemedicine Class Members was December 21, 2013 through September 4, 2018. [*Id*. at ¶ 37.] The time period analyzed for Customer Service Support Specialists was November 13, 2014 through October 20, 2018. [*Id*. at ¶ 38.]

No metrics are offered for Wellness Specialists, the third category of class members. Nor is any explanation is offered as to how the metrics offered for the Telemedicine Specialist and Customer Support Specialist were applied more broadly to the entire class. Lastly, the explanation offered as to how plaintiffs calculated the damage estimates for the alleged Labor Code violations [*Id*. at ¶ 40(b)i, ii & iii] or their PAGA claim [*Id*. at ¶ 40(c).] is highly generalized and the Court cannot reliably discern from the record presented whether the proposed settlement falls within the range of possible approval. *See Thio v. Genji, LLC, et al.*, 14 F. Supp. 3d 1324, 1335 (N.D. Cal. 2014) (stating that in evaluating whether a proposed settlement falls within the range of possible approval, "courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer.").

### 3. Attorneys' Fees, Costs and Administrative Expenses

As previously discussed, there are discrepancies between the Settlement Agreement and plaintiffs' Motion with respect to what they propose be allocated for Costs and Administrative Expenses.

With respect to attorney fees, plaintiffs' counsel represents that over 300 hours and $200,000 in fees have been incurred thus far. [Doc. No. 67-3, *Stoops Decl*. ¶ 51.] According to the Motion, counsel will request up to $442,500 in fees, which is 30% of the overall settlement. Although the Court need not resolve the issue at this preliminary stage (particularly when there are other issues that preclude the approval of settlement at this time), the Court has some concern regarding plaintiffs' request for 30% of the settlement, in light of the fact that the benchmark is 25% and counsel has incurred less than half the requested amount thus far. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942. Plaintiffs' counsel should bear this in mind if or when he presents a fees motion for final approval.

### 4. Service Awards

As discussed, plaintiffs seek $7,500 as an incentive award for named plaintiff Smith, $5,000 to opt-in plaintiff Fox, and $2,500 to named plaintiff Sierra [Doc. Nos. 67-2, ¶ 5.3, 67-1, p. 19.] While service awards are permissible, they must also be reasonable. *Staton v.*

*Boeing North American, Inc.*, 327 F.3d 938, 977 (9th Cir.) Courts must evaluate such awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... the amount of time and effort the plaintiff expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." *Id.* (internal quotations and citation omitted).

Here, named plaintiff Smith will seek $7.500, an award that is over three and a half times plaintiffs' estimate of the average $ 2,104.40 payment they say class/collective members may expect to receive. Named plaintiff Sierra will seek $2,500, just a little more then the average, and Fox, who is not a named plaintiff and who opted-in to the case fairly recently, will seek $5,000, over twice the estimated average.

These may be reasonable ratios, but plaintiffs' counsel has provided very little detail about these individuals' efforts in this case. [Doc. No. 67-3, *Stoops Decl.* ¶¶ 53-54.] Additionally, no explanation is offered as to why the requested service awards are reasonable in relation to the overall settlement and the individual payments to class members. Lastly, the Court has not been provided with any legal authority to support granting a service award to Fox, who is an opt-in plaintiff for the FLSA claims, but is not a named plaintiff. If or when plaintiffs formally apply for service awards, the Court would benefit from additional discussion of the justification, as well as declarations or other evidence supporting their request.

**5. Proposed Notice**

The notice to the class is not adequate. In a FLSA action, "the court must provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether or not to participate.'" *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting *Hoffmann-La Roche, Inc*, 493 U.S. at 170.). In light of this requirement, and because of the inherent differences between Rule 23 class actions and FLSA collective actions, courts considering approval of settlements in these hybrid actions consistently require class notice forms to

22

explain: "(1) the hybrid nature of th[e] action; (2) the claims involved in th[e] action; and (3) the options that are available to California Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collective action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing." *Pierce*, 2013 WL 1878918 at \*4; *see also Sharobiem*, 2015 WL 10791914, at \*4 (noting that because the proposed claim form did not distinguish between a Rule 23 class action and FLSA class action, it was "not clear and easy to follow").

Here, the proposed notice does not list the claims asserted in the FAC. Nor does it acknowledge the hybrid nature of this lawsuit. It also does not provide any mechanism for a recipient to participate in the Rule 23 class but not opt in to the FLSA collective action. To remedy this deficiency, if the parties wish to continue with a settlement of both California and FLSA claims, any notice must: (1) explain how much of the settlement amount will be paid for the release of the FLSA claims; (2) explain and provide a mechanism for recipients to opt-in to the collective action that complies with the FLSA; and (3) explain the consequences of opting into the FLSA collective, opting out of the Rule 23 class, or doing nothing.[3] Alternatively, plaintiffs can dismiss their FLSA claims without prejudice and seek approval solely of a Rule 23 class for the California claims, without any release of FLSA claims for class members.

Dated:  November 7, 2019

Hon. Karen S. Crawford
United States Magistrate Judge

---

[3] Necessarily, a prerequisite to remedying this deficiency is to reach an agreement as to a settlement fund in exchange for the release of FLSA claims. The Court will not approve a settlement that asks members of the class action or collective action to release FLSA claims without compensation for doing so.