1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9         SOUTHERN DISTRICT OF CALIFORNIA
10
11   MONICA SMITH and ERIKA SIERRA,          Case No.:  18-cv-00780-KSC
     individually and on behalf of all others
12   similarly situated individuals,          **ORDER**
13                              Plaintiffs,    **(1) GRANTING FINAL APPROVAL
14   v.                                        OF CLASS/ COLLECTIVE ACTION
                                               SETTLEMENT; and**
15   KAISER FOUNDATION HOSPITALS, a
16   California corporation,                   **(2) GRANTING MOTION FOR
                                               ATTORNEYS' FEES, LITIGATION
17                              Defendant.     COSTS, CLASS REPRESENTATIVE
18                                             INCENTIVE AWARDS AND
                                               SETTLEMENT ADMINISTRATION
19                                             EXPENSES**
20
21                                            **[Doc. Nos. 86, 92]**
22
23          Before the Court are plaintiffs' Motion for Final Approval of Class/Collective
24   Action Settlement (the "Final Approval Motion," Doc. No. 92) and Motion for Attorneys'
25   Fees, Litigation Costs, Class Representative Incentive Awards, and Settlement
26   Administration Expenses (the "Fee Motion," Doc. No. 86, and collectively the "Motions").
27   The Motions are unopposed.  The Court heard oral argument on the Motions on June 9,
28   2021 (the "Fairness Hearing").  The Court has carefully considered the parties' moving

papers, the arguments of counsel, and the applicable law.  For the reasons stated below, the Court finds the proposed settlement is fair, reasonable, and adequate, and **GRANTS** the Final Approval Motion.  The Court further finds that that the attorneys' fees and other expenditures from the common fund are reasonable, and **GRANTS** the Fee Motion.

## I.  BACKGROUND

### A. Plaintiffs' Allegations

Plaintiffs Monica Smith and Erika Sierra ("plaintiffs") filed this action individually and on behalf of similarly-situated employees of defendant Kaiser Foundation Hospitals ("defendant"), alleging that defendant violated the Fair Labor Standards Act ("FLSA") and California wage and hour laws.  *See generally* Doc. No. 1 (complaint); Doc. No. 70 (amended complaint).  The Court has previously described plaintiffs' allegations in detail and presumes familiarity with the facts of the case.  Briefly stated, defendant employs "Telemedicine Specialists," "Customer Support Specialists," and "Wellness Specialists" to receive and respond to call center calls.  Plaintiffs allege that defendant, in violation of federal and state labor laws, failed to compensate these employees for certain tasks performed at the start of each shift, during their off-the-clock breaks, and at the end of their shift.  The allegedly uncompensated tasks included, *inter alia*, starting up and shutting down computers, logging into and out of applications, locating equipment, shredding patient notes, and traveling to defendant's offices for training, meetings, and to pick up equipment.  Plaintiffs further allege that defendant failed to reimburse employees for necessary business expenditures.

### B. Procedural History

On February 13, 2019, following the exchange of "voluminous" information between the parties and two full-day sessions facilitated by a third-party mediator, the parties reached an agreement in principle to settle.  Doc. No. 92-1 at 10-11; *see also* Doc. No. 65 (Notice of Settlement).  Thereafter, plaintiffs twice moved for preliminary approval of the settlement.  *See* Doc. Nos. 67, 72, 78, 81.  The Court denied those motions, citing concerns with the structure of the settlement, the scope of the proposed FLSA collective,

failure to obtain proper consent for settlement of the FLSA claims, and inadequate notice. *See*, *e.g.*, Doc. No. 72 at 18-23; Doc. No. 81 at 29, 31-33. The Court required plaintiffs to remedy these deficiencies in any renewed motion for preliminary approval.

On October 6, 2020, plaintiffs moved for a third time for preliminary settlement approval. Doc. No. 82. The renewed motion was supported by a Second Amended Collective and Class Action Settlement Agreement[1] and an amended proposed notice. *See generally id.* Upon review of plaintiffs' renewed motion and supporting documents, the Court found that plaintiffs had "addressed all the deficiencies and concerns previously identified by the Court and have made all appropriate amendments and corrections to the Second Amended Agreement and the Amended Notice." Doc. No. 84 at 2. The Court therefore preliminarily approved the settlement, provisionally certified the Class and the Collective,[2] and directed that notice be mailed to each member of the Settlement Class. *Id.* The Court set a date for the Fairness Hearing and ordered that any objections to the settlement be filed with the Court no later than April 19, 2021. *Id.* at 3.

The Fairness Hearing took place on June 9, 2021. All parties were represented by counsel. No class members filed objections to the settlement nor appeared at the Fairness Hearing. *See* Doc. No. 92-1 at 28; Doc. No. 95 at 3. Only six of the 474 Class or Collective members requested exclusion. *See id.*

**C. The Settlement**

The Settlement Agreement provides that defendant will pay a gross settlement amount of $1,475,000 (plus all applicable employer-side payroll taxes).[3] Subject to the

---

[1] The Court will hereafter refer to this document, which was attached to the motion for preliminary approval and to the Final Approval Motion, as the "Settlement Agreement." *See* Doc. Nos. 82-1, 92-2. All citations to the Settlement Agreement are to the numbered paragraphs therein.

[2] The Court will hereafter refer to the Class and the Collective jointly as the "Settlement Class." *See* Doc. No. 92-2 at ¶1.39.

[3] The Court will hereafter refer to this as the "Gross Settlement Amount" or the "Settlement Funds."

Court's approval, the following amounts are to be deducted from the Gross Settlement Amount:

| | |
|---|---|
| Class Counsel's Fees | $442,500.00 |
| Class Counsel's Costs | $55,000.00 |
| Service Awards | $15,000.00 |
| Settlement Administration Costs | $9,900.00[4] |
| PAGA Payment | $30,000.00 |

*See* Doc. No. 92-2 at ¶¶1.25, 5.1, 5.2, 5.3, 5.4.   The remaining $922,600.00 (the "Net Settlement Amount") will be distributed to members of the Settlement Class. *Id.* at ¶1.25. The parties have allocated $203,142.50 of the Net Settlement Amount to the FLSA Collective, to be distributed to its members according to the following formula:

> The FLSA Settlement Payment to a FLSA Collective Member will be calculated by dividing the number of Eligible Workweeks attributed to the FLSA Collective Member worked during the Collective Period by all Eligible Workweeks during the Collective Period attributed to members of the FLSA Collective, multiplied by $203,142.50. Otherwise stated, the formula for a FLSA Collective Member is: (individual's Eligible Workweeks ÷ total FLSA Collective Eligible Workweeks) x $203,142.50.

> The number of Eligible Workweeks for Telemedicine Specialists shall be multiplied by 2.4, because they earned, on average, 2.4 times the amount earned by other FLSA Collective Members. Otherwise stated, the formula for a FLSA Collective Member who worked as a Telemedicine Specialist is: ((individual Eligible Workweeks x 2.4) ÷ total FLSA Collective Eligible Workweeks) x $203,142.50.

Doc. No. 92-2 at ¶5.5.1.

---

[4] At the time plaintiffs filed their Final Approval Motion, they estimated the Settlement Administration Costs would not exceed $15,000. Doc. No. 92-1 at 23. Plaintiffs recently reported that their counsel's actual costs were $9,900. Doc. No. 93 at 6.

4

The parties have allocated all remaining funds (i.e., the Net Settlement Amount minus the $203,142.50 allocated to the FLSA Collective) to the Settlement Class, to be distributed to its members according to the following formula:

> The individual settlement payment to a Settlement Class Member will be calculated by dividing the number of Eligible Workweeks attributed to the Settlement Class Member worked during the Class Period by all Eligible Workweeks during the Class Period attributed to members of the Settlement Class, multiplied by the Net Settlement Amount (after reduction of the $203,142.50 attributed to FLSA Collective Members). Otherwise stated, the formula for a Class Member is: (individual's Eligible Workweeks ÷ total Settlement Class Eligible Workweeks) x (Net Settlement Amount - $203,142.50).

> The number of Eligible Workweeks for Telemedicine Specialists shall be multiplied by 2.4, because they earned, on average, 2.4 times the amount earned by other Settlement Class Members. Otherwise stated, the formula for a Class Member who worked as a Telemedicine Specialist is: ((individual Eligible Workweeks x 2.4) ÷ total Settlement Class Eligible Workweeks) x (Net Settlement Amount - $203,142.50).

Doc. No. 92-2 at ¶5.6.1.

Each eligible Settlement Class member will automatically receive a check for the appropriate amount(s) based on these formulas. Any distribution checks not cashed within the timeframes set forth in the Agreement will be cancelled. *Id.* at ¶5.6.2. If the total amount of cancelled settlement distributions is greater than $5,000, those funds will be re-distributed *pro rata* to members of the Settlement Class who cashed the first distribution check, and otherwise will be paid to California Rural Legal Assistance, Inc. *Id.*

In exchange for the Gross Settlement Amount, plaintiffs and all other members of the Settlement Class agree to release any and all claims that "relate in any way" to the allegations in the Complaint, including defendant's alleged violations of California's Labor Code and unfair competition laws, and further agree to a general release of claims under California Civil Code § 1542. *See id.* at ¶¶6.1, 6.3. The members of the FLSA Collective further agree to release claims related to the allegations in the complaint arising under the FLSA. *Id.* at ¶6.2. Ms. Smith and Ms. Sierra, as class representatives, generally release

1 all claims against defendant arising out of their relationship with defendant, not including
2 any claims arising out of their participation in this lawsuit. *Id.* at ¶6.4.

## II.    THE SETTLEMENT CLASS WILL BE CERTIFIED

The Court begins with plaintiffs' request that it "confirm as final" the certification of the Class (including appointment of the class representatives and class counsel) and the designation of the action as a collective action under the FLSA. Doc. No. 92-1 at 8. To do so, the Court must ascertain whether the Class satisfies the "four threshold requirements of … Rule 23(a): numerosity, commonality, typicality, and adequacy of representation," as well as the requirements of one of the subsections of Rule 23(b). *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013) (quoting Fed. R. Civ. P. 23). The Court provisionally certified the Class when it preliminarily approved the settlement and is not aware of any reason to depart from its prior analysis. Nevertheless, the Court addresses each of the relevant requirements here.

**A. Numerosity**

Rule 23(a)'s numerosity requirement is satisfied where the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Rule "provides no bright-line test or minimum number of class members necessary to meet the numerosity requirement," although many courts have adopted a "rule of thumb" that a proposed class of more than 40 persons is sufficiently numerous. *A.R. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474, 480 (D. Or. 2013) (citations omitted). Here, the Class consists of "approximately [468][5] hourly Telemedicine Specialists, Customer Support Specialists, and Wellness Specialists." Doc. No. 92-1 at 7. Joinder of all these potential plaintiffs would be impracticable. Accordingly, the Court finds the numerosity requirement is met.

///

---

[5] This number has been revised to reflect the six opt-outs. *See* Doc. No. 95 at 3 ("As of this date, there are 468 Participating Class Members who will be paid their portion of the Net Settlement Amount…. ").

18-cv-00780-KSC

**B. Commonality**

Rule 23(a)'s commonality requirement is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A single common issue will suffice. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (collecting cases). Here, the class members' claims involve common questions of law and fact regarding whether defendant's official or unofficial policies resulted in underpayment of work performed by Class members, and whether defendant issued wage statements that did not comply with California law. The answers to these questions would "'resolve … issue[s] that [are] central to the validity of each one of the claims in one stroke.'" *Id.* (citations omitted). Accordingly, the Court finds the commonality requirement is satisfied.

**C. Typicality**

Rule 23(a) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "'The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation omitted). Here, the claims of the named plaintiffs (and proposed class representatives) arise out of the same course of conduct and resulted in the same injuries as those of the subclasses they seek to represent. The wrongful conduct alleged in the complaint is not unique to the named plaintiffs, and the damages to the class members, if any, arise out of the non-payment of wages for time spent on required job functions at the beginning, middle, and end of their shifts and failure to provide accurate wage statements. The Court finds the typicality requirement is satisfied.

**D. Adequacy**

Rule 23(a)'s final requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether this requirement is met, the Court must assess whether (1) the interests of the class representatives and their counsel conflict with those of other class members and (2)

whether the class representatives and their counsel will prosecute the action vigorously on behalf of the class. *See Ellis*, 657 F.3d at 985. "These inquiries require the court to consider a number of factors, including 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Ontiveros v. Zamora*, 303 F.R.D 356, 364 (E.D. Cal. 2014) (quoting *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992)).

The Court finds that the proposed class representatives and their counsel have vigorously prosecuted this action, leading ultimately to the settlement now before it, and have faithfully discharged their duties as fiduciaries to the absent class members. The Court finds no evidence of collusion or antagonism. Furthermore, counsel for the class is experienced in employment litigation, and has successfully litigated numerous wage-and-hour class actions such as this one. Therefore, the Court finds this requirement has been satisfied.

**E. Rule 23(b)(3) – Superiority and Predominance**

In addition to "satisfy[ing] each prerequisite of Rule 23(a)," a party seeking class certification must also "establish an appropriate ground for maintaining the class action under Rule 23(b)." *Walker v. Life Ins. Co. of the S.W.*, 953 F.3d 624, 630 (9th Cir. 2020). Here, plaintiffs seek certification under Rule 23(b)(3), which permits certification where "the [C]ourt finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The predominance inquiry asks whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Walker*, 953 F.3d at 630 (citations omitted). The Court should answer in the affirmative where there are significant, common questions that "can be resolved in a single adjudication" and there is "a clear justification" for adjudication on a representative, rather than individual, basis. *See id.* "Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a

class action is efficient and whether it is fair." *Wolin v. Jaguar Land Rover N. Am.*, *LLC*, 617 F.3d 1168, 1175–76 (9th Cir. 2010). "In the settlement context," however, the Court "'need not inquire whether the case, if tried, would present intractable management problems.'" *Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020) (citation omitted).

The Court reaffirms its findings that the requirements of superiority and predominance have been satisfied here. *See* Doc. No. 81 at 14. The Court's conclusions that resolution of the significant and common questions regarding defendant's conduct and whether that conduct violated the law would "drive" resolution of the class members' claims, and that classwide adjudication of those claims was superior considering "the relatively limited potential recovery for the class members as compared with the costs of litigating the claims," remain unchanged. *Id.*

## F. Certification of the Settlement Class Is Appropriate

Having found the requirements of Rule 23(a) and (b)(3) are met, the Court certifies the following class for settlement purposes:

> All current and former employees who, between February 21, 2013 and February 18, 2021, worked for Kaiser Foundation Hospitals at its San Diego, California location, with the job title of Customer Support Specialist, Wellness Specialist, or Telemedicine Specialist, in job codes 20005, 50278, and 20186, and did not timely file a request for exclusion from the class.

*See* Doc. No. 92-1 at 19; Doc. No. 92-2 at ¶1.6; Doc. No. 94-4 at 13. Named plaintiffs Monica Smith and Erika Sierra are appointed class representatives, and will hereafter be referred to collectively as the "Class Representatives." Finkelstein & Krinsk, LLP and Sommers Schwartz, P.C. are jointly appointed to represent the class, and will hereafter be referred to collectively as Class Counsel.

The Court further finds that the FLSA's less stringent requirement that the members of the proposed collective be "similarly situated" is satisfied. *See* 29 U.S.C. § 216(b). Plaintiffs "are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018). For the same reasons the

18-cv-00780-KSC

Court finds that the proposed Class may be certified pursuant to Rule 23, the Court finds plaintiffs are similarly situated with respect to other members of the proposed collective. Accordingly, the Court designates the following FLSA collective for the purposes of settlement:

> All current and former employees who, between December 21, 2014 and February 18, 2021, worked for Kaiser Foundation Hospitals at its San Diego, California location, with the job title of Customer Support Specialist, Wellness Specialist, or Telemedicine Specialist, in job codes 20005, 50278, and 20186, and who timely submitted an opt-in consent form.

*See* Doc. No. 92-1 at 19; Doc. No. 92-2 at ¶1.7; Doc. No. 94-4 at 13, 19.

### III.   FINAL SETTLEMENT APPROVAL DETERMINATION

**A. Standard for Approval Under Rule 23(e)**

Judicial policy strongly "favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Nevertheless, Rule 23 imposes upon district courts an "independent obligation to ensure that any class settlement is 'fair, reasonable, and adequate,'" to ensure that neither the class representatives nor their counsel have "bargained away absent class members' rights" in the settlement. *Briseño v. Henderson*, __ F.3d __, 2021 WL 2197968, at **4, 6 (9th Cir. June 1, 2021) (citing Fed. R. Civ. P. 23(e)(2)(C)). "This requires a balancing assessment of:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Chambers v. Whirlpool Corp.*, 980 F.3d 645, 669 (9th Cir. 2020) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). "The Court must also determine that the settlement is not the 'product of collusion among the negotiating parties.'" *Id.*

///

**B. Standard for Approval of FLSA Settlement**

The Court's approval is also required for settlement of an FLSA collective class action claim. *See Kerzich v. Cty. of Tuolomne*, 335 F.Supp.3d 1179, 1183 (E.D. Cal. 2018) ("Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court.") (citing *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)). Before approving the settlement, the Court must determine that it constitutes "a fair and reasonable resolution of a bona fide dispute" over "the existence and extent of [d]efendant's FLSA liability." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (citations omitted); *see also Ambrosino v. Home Depot U.S.A., Inc.*, No. 11-cv-1319 L(MDD), 2014 WL 3924609, at *1 (S.D. Cal. Aug. 11, 2014) (noting that the Court may approve an FLSA settlement that "reflects 'a reasonable compromise over [disputed] issues.'").

In considering whether to approve the proposed settlement of the collective's FLSA claims, the Court will consider:

> (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Selk*, 159 F.Supp.3d at 1173. The Court will approve the settlement if, upon consideration the totality of the circumstances as reflected in these factors, it appears that the settlement "is a reasonable compromise" that will "vindicate, rather than frustrate, the purposes of the FLSA." *Id.* at 1172-73.

**C. Application to the Proposed Settlement**

Although there are important distinctions between the policy objectives of – and the rights protected by – Rule 23 and the FLSA, the foregoing discussion demonstrates that there is considerable overlap between the factors considered for settlement approval. *See Kerzich*, 335 F.Supp.3d at 1184 (noting that "courts often apply the Rule 23 factors for

assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions").  Furthermore, the Court has a "'considerably less stringent' obligation to ensure fairness of the settlement in an FLSA collective action [as compared to] a Rule 23 action because parties who do not opt in are not bound by the settlement." *Millan v. Cascade Water Svcs. Inc.*, 310 F.R.D. 593, 607 (E.D. Cal. 2015) (citation omitted).  Thus, the Court finds that if the proposed settlement warrants approval under Rule 23, it should also be approved under the FLSA, and will therefore conduct its Rule 23 and FLSA analyses in tandem.

     1. <u>Strength of Plaintiff's Case</u>

As a rule, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (quoting 4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002)).  This is particularly true where "there are significant barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Here, although plaintiffs believed their claims had merit, defendant raised many factual and legal defenses to plaintiffs' allegations, including that due to a six-minute "shift tolerance" window, many members of the Settlement Class were likely overcompensated; that plaintiffs "grossly overstate[d] the amount of time spent on pre- and post-shift tasks; that defendant maintains a policy and trains employees not to clock in until their shift begins; and that plaintiffs' FLSA and California claims were not actionable.  Doc. No. 92-1 at 13-14.  In the face of these many legal and factual disputes, continued litigation presented a real risk of negative outcomes at class certification, summary judgment, trial and appeal.  The Court finds this factor weighs in favor of approval.

     2. <u>The Value of the Settlement Compared to Plaintiffs' Potential Recovery</u>

In deciding whether a proposed settlement is fair, reasonable and adequate, the Court must "consider[]" the "settlement's benefits … by comparison to what the class actually

gave up by settling." *See Campbell v. Facebook*, 951 F.3d 1106, 1123 (9th Cir. 2020) (citation omitted). However, the Court must remain mindful that "'the very essence of a settlement is compromise ….'" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted). The Court should not "withhold [its] approval" of a proposed settlement merely because it represents "a fraction of the potential recovery at trial." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527.

As noted, the Settlement Agreement calls for a gross non-reversionary payment of $1,475,000.00. Doc. No. 92-1 at 18. Based on counsel's and their experts' damages analysis, this amount represents between 82.35 and 189.69 percent of defendant's potential off-the-clock wage claim exposure. *Id.* Further, even assuming plaintiffs were successful at trial on *all* "potentially meritorious" claims for labor code violations *and* including PAGA penalties, the Gross Settlement Amount represents between 28.84 and 35.97 percent of defendant's greatest possible exposure. *Id.* After subtracting fees, counsel's costs, settlement administration costs, incentive awards, and PAGA penalties, there remains a net settlement amount of $922,600.00 for distribution to the Settlement Class. *Id.* at 18-21. A total of $203,142.50 of the Net Settlement Amount (approximately 22%) will be allocated to the FLSA collective members, with the remainder (approximately 78%) apportioned to the Class. *Id.* at 21. Each Settlement Class member will automatically receive an average payment of $1,971.37 (the highest estimated payment being $5,894.70) calculated using a formula developed by expert economists. *Id.* at 20-21, 31; *see also* Doc. No. 95 at 4.

The Court finds that the amount of the settlement as compared to plaintiffs' potential recovery weighs in favor of approval of the settlement.

3. <u>Extent of Discovery</u>

Next, the Court assesses whether the "'parties have sufficient information to make an informed decision about settlement.'" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted)). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528. Plaintiffs here represent that at the time of the settlement, defendants had

produced, and plaintiffs' counsel had reviewed, extensive documents and data related to plaintiffs' claims, including: time and pay records; policies for timekeeping, logging in and logging off; training manuals; badge swipe records; and data modeling and statistical analyses for identifying pre-shift and post-shift activities for the members of the Settlement Class. Doc. No. 92-1 at 11. In addition, plaintiffs' counsel conducted intake interviews, reviewed intake forms for potential opt-in plaintiffs, and consulted with expert economists. *Id.* at 11-12. The parties attended two full-day mediation sessions facilitated by a neutral mediator, in preparation for which plaintiffs' counsel spent a significant amount of time researching the law and engaging with their damages expert. *Id.* at 10, 29.

Given this history, the Court is persuaded that the parties entered into the Settlement knowing the relevant facts and strengths and weaknesses of their claims and defenses. The Court finds this factor weighs in favor of approving the settlement.

### 4. Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). Here, Kevin Stoops, lead counsel for the Settlement Class, has submitted a declaration in support of the Final Approval Motion. Doc. No. 92-3. Mr. Stoops has nearly 17 years' experience litigating in the areas of employment law and commercial litigation, including complex and class actions. *Id.* at 5-10. Mr. Stoops represents that once an agreement in principle was reached with defendant, both Class Counsel and defendant's counsel worked diligently to ensure that the settlement was fair, reasonable and adequate, including by consulting extensively with third-party economic experts. *Id.* at 17, 20-21. Mr. Stoops further declares that the settlement is "substantial" and "a fair compromise of the claims," which he "fully endorse[s]" as "in the best interests of all parties." *Id.* at 25-27. Given Mr. Stoops' considerable experience in this area, the Court finds that his assessment is entitled to consideration, and further finds his recommendation weighs in favor of approval.

///

### 5. Reaction of Class Members

As noted, as of this date, no member of the Settlement Class objected to the Settlement, and only six Settlement Class members opted out of participating in the Settlement. The lack of objections and relatively small number of opt-outs "raises a strong presumption" that the proposed Settlement is "favorable" to members of the Settlement Class. *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529 (citations omitted). The Court finds this factor weighs in favor of approval.

### 6. Indicia of Collusion

The Ninth Circuit recently clarified that as part of its balancing of factors, the Court must examine the terms of the Settlement for the presence of any "red flags" that indicate collusion between the settling parties at the expense of the absent class members, and "scrutinize them where they appear." *Briseño*, 2021 WL 2197968, at *9. Those red flags are: an attorney fee award that is "disproportionate" to the overall settlement; an agreement among counsel not to challenge the amount of fees requested, and a reversion of unclaimed funds to the defendant rather than to the class. *Id.* at **8-9.

Here, the Settlement is non-reversionary, and, for reasons discussed in more detail below, the Court finds that the attorney fee award requested by counsel is fair and reasonable. Thus, the only red flag for the Court's scrutiny is the agreement by defendants not to oppose Class Counsel's fee request (a so-called "clear sailing" provision). *See* Doc. No. 92-2 at ¶5.2. As the *Briseño* court noted, the existence of a clear-sailing provision, standing alone, is not "an independent basis for withholding settlement approval." *Briseño*, 2021 WL 2197968, at *10. On examination, the Court observes that the parties explicitly stated that the payment of counsel's requested fees is not a material term of the agreement. *See* Doc. No. 92-2 at ¶5.2.1. The parties also agreed that if the Court approved a lesser fee award, the difference between the award and the fees requested would revert to the Settlement Class, thereby avoiding the collusive concerns addressed in *Briseño*. *See id.* at ¶¶5.2, 5.2.1; *see also Briseño*, 2021 WL 2197968, at *9 (noting that when "excessive fees" are returned to defendant, "a class member may not have standing to object" to the fee

1  request).  The Court is therefore persuaded that the clear-sailing provision in the Settlement
2  is not evidence of collusion between the parties or their counsel at the expense of the
3  Settlement Class.

4  **D. Balancing of Factors**

5      The Court has considered the foregoing factors and finds that on balance, they weigh
6  in favor of the Settlement. Therefore, the Court finds the Settlement fundamentally fair,
7  adequate, and reasonable, and approves the settlement of the class claims under Rule 23.
8  The Court further finds that the settlement constitutes a fair and reasonable resolution of a
9  bona fide dispute over FLSA provisions, and approves the settlement of the FLSA claims.

10  **IV.   ATTORNEYS' FEES AND OTHER EXPENDITURES**
11  **FROM THE SETTLEMENT FUNDS**

12  **A. Attorneys' Fees**

13      Rule 23(h) provides that "[i]n a certified class action, the court may award
14  reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties'
15  agreement." Fed. R. Civ. P. 23(h).  "[C]ourts have an independent obligation to ensure that
16  the [fee] award, like the settlement itself, is reasonable, even if the parties have already
17  agreed to an amount." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946
18  (9th Cir. 2011). The "need to carefully scrutinize the fee award" is not lessened by the fact
19  that the request is unopposed by defendant. *Id.* at 948.  The Court must also review the
20  payment of attorneys' fees from settlement proceeds in approving an FLSA settlement.
21  *See Kerzich*, 335 F.Supp.3d at 1184.

22      In the Ninth Circuit, there are two methods of assessing attorneys' fees in common
23  fund cases: the "percentage-of-recovery" method and the "lodestar" method.  *Bluetooth*,
24  654 F.3d at 942.  Although the method applied is a matter of the Court's discretion, the
25  "primary" method used is the percentage method.  *See Vizcaino v. Microsoft Corp.*, 290
26  F.3d 1043, 1047 (9th Cir. 2002).  As discussed above, the Court must also "scrutinize[e]
27  the fee arrangement for potential collusion or unfairness to the class."  *Briseño*, 2021 WL
28  2197968, at *8.

In this Circuit, 25% is the "benchmark" for fee awards from a common fund, but the Court may at its discretion award a higher percentage, taking into consideration the result achieved, the risks undertaken by counsel (including by working on contingency), comparison to fee awards in similar cases, and the lodestar crosscheck. *See Bluetooth*, 654 F. 3d at 942; *see also Vizcaino*, 290 F.3d at 1050 (noting that the "25% benchmark rate" is "a starting point for analysis"). The Court should also consider "the size of the fund" in determining whether a higher percentage is appropriate. *See Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C. D. Cal. 2008). Where, as here, the gross settlement amount is less than $10 million, courts often award fees in the range of 30-50% of the funds. *See id.* (citing *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995)).

Here, Class Counsel request a fee award of 30% of the Gross Settlement Amount, or $442,500.00. *See* Doc. No. 86-1 at 6, 10. On consideration of the foregoing factors, the Court finds that this request is reasonable. The Settlement Class's recovery is substantial, representing at least 82% of defendant's potential exposure for labor-code violations, and at least 28% of defendant's greatest possible exposure for all claims. Doc. No. 86-1 at 10. The risk of nonpayment assumed by Class Counsel was not trivial given the many challenges defendant raised to class certification and liability. *See Selk*, 159 F. Supp. 3d at 1175 (finding a settlement that was 26% of the total possible recovery "fair and reasonable" and "stress[ing] the possibility that plaintiffs would recover nothing"). The Settlement provides for direct, automatic payment to each Settlement Class member. Further, the Court-approved notice advised the Settlement Class of counsel's intent to request 30% of the Gross Settlement Amount in fees. *See* Doc. No. 92-4 at 17. There have been no objections to the Settlement, signaling the Settlement Class's approval of counsel's fee request. *See* Doc. No. 93-1 at 3. Class Counsel has very capably represented the Settlement Class on a contingency fee basis throughout the litigation. Doc. No. 86-2 at 11.

Comparing the requested fee to awards in similar cases, particularly those in which the settlement fund was less than $10 million, further confirms the reasonableness of a 30%

18-cv-00780-KSC

fee award in this case.[6]  The Court therefore finds Class Counsel's requested 30% fee award is "in line with attorneys' fees approved in other wage and hour class actions in the Ninth Circuit," supporting its reasonableness.  *Espinosa v. Cal. College of San Diego*, *Inc.*, Case No. 17-cv-744-MMA (BLM), 2018 WL 1705955, at **10-11 (approving 30% fee request); *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450-51 (E.D. Cal. 2013) (collecting cases with fee awards of 30% or higher).

Finally, the lodestar cross-check also supports a 30% fee award in this case.  *See Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar … provides a check on the reasonableness of the percentage award.").  The lodestar is calculated by applying a reasonable hourly rate to the number of hours Class Counsel has reasonably billed to the case. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015).

Here, Class Counsel represents that as of June 1, 2021 (i.e., approximately one week before the Fairness Hearing), they had expended 532 hours working on the litigation, at a lodestar amount of $274,393.50.  Doc. No. 93 at 5.  Class Counsel further represents that to account for additional future work performed related to final approval and settlement administration, they anticipate that another $15,000 - $20,000 will be added to their lodestar.  *Id.* The Court has reviewed Class Counsel's rates and finds them to be reasonable. Doc. No. 86-2 at 9-10.  Further, considering the complexity of the action, the significant discovery undertaken, and Class Counsel's preparation for mediation and settlement – including by consulting with experts to guide the damages assessments and appropriate calculations of each Settlement Class member's share of the Settlement Funds – the Court

---

[6] *See, e.g., Bower v. Cycle Gear,* No. 14-cv-02712-HSG, 2016 WL 4439875, at * 7 (N. D. Cal. Aug. 23, 2016) (approving 30% fee request in employment class/collective action that settled for $1.9 million); *Loeza v. JP Morgan Chase Bank NA*, No. 3:13-cv-00095-L-BGS, 2018 WL 3140501, at *3 (S.D. Cal. June 27, 2018) (approving 30% fee request in hybrid class/collective action that settled for $950,000); *Jones v. Canon Bus. Solutions, Inc.*, No. CV12-07195 JAK (JEMx), 2014 WL 12772083, at *10 (C. D. Cal. Sept. 2, 2014) (approving 30% fee request in wage-and-hour class action that settled for $4.4 million and noting that fee awards of 30-40% are common in such actions where the recovery is under $10 million).

finds that the amount of time billed is also reasonable.  *See* Doc. No. 86-1 at 11-12; *see also generally* Doc. No. 92-3.

"[T]o account for the risk Class Counsel assumes when they take on a contingent-fee case," courts also often apply a "multiplier" to the lodestar.  *Bellinghausen*, 306 F.R.D. at 265.  For complex class actions, a multiplier between 1 and 4 is "generally appropriate." *Id.*  Class Counsel's requested fee results in a lodestar multiplier of between 1.5 and 1.61 (depending upon whether the estimates for future work are included), which is comfortably within this range.  Doc. No. 93 at 5.  Therefore, the lodestar cross-check supports a finding that Class Counsel's requested fee is reasonable.

For the foregoing reasons, the Court finds that Class Counsel's request for attorney fees of $442,500, or 30% of the Gross Settlement Amount, is fair and reasonable.

**B. Litigation Costs**

Attorneys compensated from a common fund are entitled to recover their reasonable litigation costs.  *See Bellinghausen*, 306 F.R.D. at 265.  Class Counsel represent that they have incurred $47,438.82 in costs to date for postage, photocopying, local and out-of-state travel, and other office-related costs over the course of this litigation, in addition to fees paid to expert witnesses and the mediator.  Doc. No. 86-2 at 14, 18-19; Doc. No. 93 at 6. The Court has reviewed counsel's billings and finds these expenditures were reasonable and necessary. Accordingly, the Court orders that Class Counsel be reimbursed for its reasonable litigation costs from the Settlement Funds in an amount not to exceed $55,000.00.

**C. Class Representative Incentive Awards**

Plaintiffs seek the Court's approval of the following incentive awards from the Settlement Funds: $7,500 to named plaintiff Monica Smith; $5,000 to opt-in plaintiff Christa Fox; and $2,500 to named plaintiff Erika Sierra.  Doc. No. 86-1 at 22.  Counsel relates that Ms. Smith, Ms. Sierra and Ms. Fox expended "considerable" time and effort in making the settlement possible.  *Id.*  Ms. Fox participated in multiple interviews, provided documents to counsel, and diligently worked to support counsel's efforts in pursuing the

case, reaching the settlement, and seeking the Court's approval of that settlement.  *Id.* at 22-23.  Ms. Sierra and Ms. Smith provided the same assistance, and willingly undertook the role of class representatives after being advised of the responsibilities that such role would encompass.  *Id.*

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'"  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).  Such awards, however, are discretionary.  *See id.*  Here, the Court finds the requested incentive awards are reasonable and appropriate.  Relative to both the overall settlement amount and the average recovery for members of the Settlement Class, the proposed awards are "well within the usual norms of 'modest compensation' paid to class representatives for services performed in the class action."  *Id.* (citation omitted).  The proposed awards will fairly compensate Ms. Smith, Ms. Sierra, and Ms. Fox for their assistance to class counsel and their efforts on behalf of the Settlement Class.  Therefore, the Court approves the requested incentive awards and orders that such awards be paid from the Settlement Funds.

**D. Settlement Administration Costs**

Finally, plaintiffs request payment from the Settlement Funds to the claims administrator, Simpluris, Inc. ("Simpluris").  Doc. No. 86-1 at 19-20.  The Court has reviewed Ms. Butler's declaration detailing the work performed by Simpluris, in which she describes the work performed to date, including printing and mailing the notice, assisting members of the Settlement Class with questions about the settlement, investigating any notices returned as undeliverable, and receiving and processing requests for exclusion.  Doc. No. 92-4 at 4-5.  According to Ms. Butler's declaration, the total past and anticipated future costs for settlement administration are $9,900.  *Id.* at 7; *see also* Doc. No. 93 at 6.  The Court finds that these costs are reasonable and necessarily incurred, and therefore approves the request for settlement administration costs in the amount of $9,900 be paid from the Settlement Funds.

///

## CONCLUSION AND ORDER

For the reasons stated above, the Court finds the Settlement fair, reasonable and adequate, and a reasonable compromise of disputed FLSA claims.   The Court further **ORDERS** as follows:

1. The Court certifies, for settlement purposes, a class defined as:

    All current and former employees who, between February 21, 2013 and February 18, 2021, worked for Kaiser Foundation Hospitals at its San Diego, California location, with the job title of Customer Support Specialist, Wellness Specialist, or Telemedicine Specialist, in job codes 20005, 50278, and 20186, and did not timely file a request for exclusion from the class.

2. Those members who validly requested to opt out of the settlement are excluded from the Class.

3. The Court designates this action, for settlement purposes, as a collective action on behalf of a Collective defined as:

    All current and former employees who, between December 21, 2014 and February 18, 2021, worked for Kaiser Foundation Hospitals at its San Diego, California location, with the job title of Customer Support Specialist, Wellness Specialist, or Telemedicine Specialist, in job codes 20005, 50278, and 20186, and who timely submitted an opt-in consent form.

4. The Court appoints Monica Smith and Erika Sierra as representatives of the Settlement Class for the purpose of entering into and implementing the Settlement Agreement.

5. The Court appoints Finkelstein & Krinsk, LLP and Sommers Schwartz, P.C. jointly as counsel for the Settlement Class for the purpose of entering into and implementing the Agreement.

6. Court **GRANTS** plaintiffs' unopposed Motion for Final Approval of Class/Collective Action Settlement [Doc. No. 92].

///

18-cv-00780-KSC

7. The Court approves the Second Amended Class and Collective Action Settlement Agreement and Release of Claims [Doc. No. 92-2] and all of its terms in their entirety, which are hereby incorporated as part of this Order.

8. Simpluris, Inc. shall execute the distribution of proceeds pursuant to the terms of the parties' Settlement Agreement.

9. The Court **GRANTS** plaintiffs' unopposed Motion for Attorneys' Fees, Litigation Costs, Class Representative Incentive Awards, and Settlement Administration Expenses [Doc. No. 86].

10. Class Counsel shall be paid $442,500.00 from the Settlement Funds as attorneys' fees.

11. Class Counsel shall be reimbursed up to $55,000.00 from the Settlement Funds for reasonable and necessary litigation costs. If Class Counsel's costs are less than $55,000.00, the difference shall be distributed to the members of the Settlement Class in accordance with the Settlement Agreement.

12. For her efforts on behalf of the Settlement Class, Monica Smith shall be paid $7,500.00 from the Settlement Funds.

13. For her efforts on behalf of the Settlement Class, Erika Sierra shall be paid $2,500.00 from the Settlement Funds.

14. For her efforts on behalf of the Settlement Class, Christa Fox shall be paid $5,000.00 from the Settlement Funds.

15. Simpluris, Inc. shall be paid $9,900.00 from the Settlement Funds for settlement administration costs.

16. The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing the agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be appropriate under applicable law.

///
///

17. After settlement administration and distribution of funds have been completed, and no later than ***June 15, 2022***, the parties shall file a report with this Court certifying compliance with the terms of the Agreement and this Order and Judgment.

18. Judgment is hereby entered on the terms set forth above.  The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

Dated:  June 15, 2021

Hon. Karen S. Crawford
United States Magistrate Judge

18-cv-00780-KSC